## JAMES S. FILLEBROWN *versus* THE GRAND TRUNK RAILWAY COMPANY.

By the common law, common carriers are regarded as insurers of goods delivered to them for transportation, except when their loss is occasioned by the act of God or the enemies of the government.

Common carriers may reasonably restrict their common law liability, by notice brought home to the owner of goods, before or at the time of delivery to them, if such notice is expressly or impliedly assented to by the owner.

Such notice, given to a person who was simply directed by the owner to deliver the goods to the carrier, is not sufficient to bind the owner, in the absence of all knowledge of and assent to such notice on the part of the latter.

ON REPORT.

CASE, to recover for the loss of 100 empty barrels delivered to the defendants as common carriers, at Detroit, Michigan, to be transported to Utica.

The specifications of defence alleged, —

" That the barrels mentioned in the writ were delivered to the defendant company, under a contract evidenced by a written instrument in the nature of a bill of lading then delivered to the plaintiff, and accepted by him; and while in the possession of the defendant were destroyed by fire, for which loss, by the terms and conditions of said bill of lading, the defendant company was not responsible and is not liable."

The defendants' counsel called from the hands of the plaintiff's counsel, and offered in evidence, a paper of the following purport: —

"Duplicate. (No. 131.)

" Grand Trunk Railway, Oct. 18, 1865.

"Received from F. A. Stokes, the undermentioned property, in apparent good order, addressed to J. S. Fillebrown, Utica Plank, Michigan, to be sent by the Grand Trunk Railway Company, subject to their tariff, and under the conditions stated on the other side. One hundred empty barrels. (Signed,) "W. Thorp, Agent G. T. R."

Upon the back of this bill, eighteen "notices and conditions of carriage," signed "C. J. Brydges, managing director," were printed. Number 3 was as follows :—" The Grand Trunk Railway Company give public notice that they will not be responsible for damages from the weather, fire, heat, frost," &c.

The plaintiff's counsel objected to the paper as evidence of a contract, because the plaintiff did not authorize it, was not a party to it and in no wise connected with it; but the objection was overruled.

From the deposition of William Thorp, introduced by the defendants, it appeared that he was defendants' passenger and freight agent, at Detroit, during the month of October, 1865; that, on the 18th of the month, "either the agent or consignee of the barrels shipped by Stokes," informed the defendant that he desired to ship 100 empty barrels to Utica Plank, Mich.; that he had previously spoken to him about shipping the barrels, and asked the rate of freight on them, which was given him; that Stokes was not present and knew nothing of the bill and shipping note; that he had no conversation with Stokes; that the barrels were delivered at the defendants' station about four o'clock P. M., and the bill signed by me delivered to the party who delivered the barrels; that the depot and barrels were destroyed by fire within three hours after the barrels were delivered; that every effort was made to save freight and warehouse. On cross-examination, he testified he did not see the person who delivered the barrels and signed the shipping note, and received the bill of lading; that the shipping note was destroyed by fire; and that "the plaintiff or his agent called before the barrels were delivered, and talked with deponent about the shipment, simply as to the rate."

From the deposition of Bartholomew Healey, introduced by the defendants, it appeared that he was the defendants' receiving clerk in October, 1865, at their Michigan Central Station at Detroit; recollected receiving the 100 barrels to

be shipped to Utica Plank; that he never received any goods without a shipping note on company's forms and giving a bill of lading on same; that the barrels were delivered to deponent for Mr. Thorp, and were all received before five o'clock P. M.; that they were not laden on the cars, but remained at the warehouse until burned, about three hours after delivery.

From the deposition of Marvin H. Chamberlain, read by the plaintiff, it appeared that he was F. A. Stokes' book keeper, at Detroit, Mich., October 18, 1865; that, on that day, plaintiff purchased of Stokes, through the deponent, 100 barrels, at $1,50, and $4 for cartage; that plaintiff directed the barrels to be taken that day to the station of the Michigan Central Company, at Detroit, occupied by the defendant company, to be shipped by the Grand Trunk Railway Company to a station thereon called "Utica Plank;" that they were so taken on the day of the purchase, consigned to the plaintiff and a receipt given to F. A. Stokes when delivered; that the plaintiff was not present when said receipt was given and had no knowledge of it until after the fire; that at the time of receiving the receipt the deponent gave a shipping note signed by him for F. A. Stokes, shipper, to the defendant company; that the plaintiff did not expressly authorize the deponent to sign any such paper or deliver any such to the defendants; that the plaintiff told deponent prior to the delivery of the barrels that arrangement for the delivery had been made with the defendants; that deponent did not attend personally to the delivery of the barrels, but they were delivered by a carman.

The plaintiff testified substantially, that he purchased 100 empty barrels of Stokes, Oct. 18, 1865, paying $1,50, and $4 for cartage to station; that he never saw the receipt or bill of lading until a month after the fire; that he was never a party to it and never authorized any one to make any contract with the defendants for the transportation of the barrels, or to sign any; that, on the 17th October, he made

inquiries of some one in charge of the station as to the rates of freight, and made verbal arrangements about shipping the barrels; that he never gave any directions to Chamberlain except to deliver the barrels at the station.

After the evidence was all in, the defendants agreed to submit to a default, upon the condition that, if the full Court, upon the evidence in the case, should be of the opinion that the default should stand, damages were to be assessed at *nisi prius;* otherwise the plaintiff to be nonsuit.

*S. & J. W. May,* for the plaintiff.

*Phineas Barnes,* for the defendants.

This is not a case where the default is to stand if there is any evidence that would authorize a verdict against the defendants, but the question is whether, upon facts not contested, the law is with the plaintiff or defendants.

The contract was in writing. Conditions upon the back of the bill of lading. Plaintiff or his agent at liberty to decline the conditions. If accepted by the person who brought the goods, that was enough. *Vide* authorities below. The persons to whom the plaintiff entrusted the delivery of his goods were aware of the conditions. Stokes was a merchant in Detroit, — his clerk, Chamberlain, signed the shipping note containing the conditions. Plaintiff's testimony of want of knowledge is immaterial. Angell on Carriers, § 251; *Bean* v. *Green,* 3 Fairfield, 422; *Dorr* v. *N. J. St. Nav. Co.,* 1 Kernan, 485; *N. Y. Manuf. Co.* v. *Ill. Cent. Railroad Co.,* Sup. Court U. S., Dec. T., 1865.

APPLETON, C. J. — The defendants are common carriers. By direction of the plaintiff, on 18th Oct., 1865, one hundred barrels were left with the defendants at their depot in Detroit, Michigan, to be by them transported from thence to a designated place of destination. The defendants received them in charge for that purpose. Within one or two hours after they were so left, the depot, in which they were deposited, was burned without fault on the part of the defendants.

By the common law, the common carrier being regarded as an insurer, except when the loss is by the act of God or the enemies of the government, the defendants are responsible.

The defendants seek to avoid their common law liability by reason of notice and a special contract limiting and restricting their responsibility. It has been finally settled, after much fluctuation of judicial opinion, that carriers may restrict their general liability by notices brought home to the owner of the goods, before or at the time of delivery to the carrier, if assented to expressly or impliedly by the owner.

The legal presumption, in the absence of all proof, is, that the owners of goods contract with the carrier under their common law liability. It is for the carrier to show any qualification of his responsibility.

The case shows that the plaintiff purchased the barrels in question of one F. A. Stokes, on 17th October, and, on the same day, called on the agent of the defendants, with whom he verbally arranged for the price of transportation. The agent testified " the only contract which was made was at the stipulated rate. It was verbal." The agent gave no notice of any special terms or any restrictions upon the general liability of his principals as common carriers. The plaintiff, therefore, was justified, in the absence of any notice, in presuming that the defendants would carry his goods subject to all the responsibilities incident to their vocation. " In all cases where the notice cannot be brought home to the person interested in the goods, directly or constructively, it is a mere nullity ; and the burden of proof is on the carrier, to show that the person with whom he deals is fully informed of the terms and effect of the notice." Angell on Carriers, § 247, and cases cited; *Simons* v. *The Great Western Railway Co.*, 89 E. C. L., 619.

Where, by a memorandum on a receipt for baggage, issued by an express company, it was stated that the " liability" of the company was " limited to $100, except by special agreement to be noted" thereon ; it was held that, in the

absence of any knowledge, by the owner of the baggage, of such condition, there was no consent to it by him and no bargain between the parties limiting the liability of the company. *Lemberger* v. *Westcott & al.*, 49 Barb., 283.

A carrier cannot, by a general notice, exonerate himself entirely from his legal duty and liability for property delivered him for transportation, or fix the amount beyond which he will not be responsible, in case of injury or loss. "It would in effect," observes BIGELOW, C. J., in *Judson* v. *Western Railroad Corporation*, 6 Allen, 486, "put it in the power of the carrier to abrogate the rules of law by which the exercise of his employment is regulated and governed. Certainly such a notice, even if shown to have been within the knowledge of the owner of the goods, would, in the absence of evidence of his direct assent to its terms, afford no sufficient ground for the inference that he had voluntarily agreed, without any consideration, to relinquish and give up the valuable right of having his goods carried at the risk of the carrier. On the contrary, it would be quite as reasonable to infer, under such circumstances, that the carrier did not intend to rely upon a notice upon which he could not legally insist, as that the owner of goods meant to surrender a right to which he was entitled by law. In such case, mere silence cannot be said to amount to acquiescence."

The plaintiff, after his conversation with the defendants' freight agent, directed the clerk of Stokes, of whom they were purchased, to send the barrels to the defendants' depot, informing him that he had made an arrangement with them as to their delivery, but giving him no authority to act in any way for him. Nor does the evidence show that he did any act whatever as the agent of the plaintiff,—but that, if he signed any paper, it was as the agent of Stokes, who had ceased to have any interest in the barrels to be transported.

The only question remaining is whether, upon the facts disclosed, Chamberlain, the clerk of Stokes, had any authority from the plaintiff to exonerate the defendants from their general liability as common carriers.

It is for the defendants to show he had such authority. The barrels were the plaintiff's. The defendants' agent was aware of that fact. The clerk of Stokes had no authority, express or implied, to do any act for the plaintiff except to send the goods to the defendants' depot. The clerk could not bind the plaintiff and did not attempt to. Acting only for Stokes, his signature as his agent, the defendants were aware, could not affect the rights of the plaintiff. Whether the consignor of goods, or the person depositing them with the carrier, has authority to contract, on the part of the consignee, being the owner or party interested in the transportation, for exemption of the carrier from his ordinary responsibility, is in each particular case a question of fact depending upon its special and peculiar circumstances, and to be determined by the jury. *Am. Transportation Co.* v. *Moon,* 7 Law Register, 352.

" It is no longer open to controversy in this State," observes BIGELOW, C. J., in *Buckland* v. *Adams Express Co.,* 97 Mass., 125, " that a carrier may limit his responsibility for property entrusted to him, by a notice containing reasonable and suitable restrictions, if brought home to the owner of goods delivered for transportation, and assented to clearly and unequivocally by him. It is also settled that assent is not necessarily to be inferred from the mere fact that knowledge of such notice on the part of the owner or consignee of goods is shown. The evidence must go further, and be sufficient to show that the terms on which the carrier proposed to carry the goods were adopted as the contract between the parties, according to which the service of the carrier was to be rendered." In the present case, we think Chamberlain had no authority, express or implied, from the plaintiff, to relieve the defendants from their legal responsibility as common carriers.          *Default to stand.*

KENT, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

WALTON, J., did not concur.