JAMES B. BLOSSOM, Respondent, *v.* MOSES DODD, President of Dodd's Express, Appellant.

The common law liability of common carriers cannot be limited by a notice, though such notice be brought to the knowledge of the persons whose property they carry ; but such liability may be limited by express contract.

Tokens given in exchange for baggage checks are not of such a nature as to put persons on their guard as to memoranda printed upon them, and persons receiving them are not presumed to know their contents or to assent to them.

Accordingly, where a railroad passenger in a car, dimly lighted at one end, delivers his baggage checks to an express messenger and receives in return a card or receipt on which the number of the check is entered, and which also contains an agreement, limiting the liability of the express company, printed in much smaller type than the rest of the card, and so fine as to be illegible where the passenger is sitting.—*Held*, that the printed matter did not enter into or form a contract between the parties.

(Argued December 15, 1870 ; decided December 20, 1870.)

APPEAL from an order of the General Term of the Supreme Court, in the second judicial district, setting aside a judgment entered upon the report of a referee and granting a new trial.

This action was brought to recover for baggage of the plaintiff lost by the defendant.

The defendant was the president of Dodd's express, a joint stock company, doing business in the city of New York and its vicinity.

On the 17th of October, 1866, the plaintiff was a passenger on a train of cars, which was proceeding to New York on the New Jersey Central railroad. When the train was nearly at the end of its route, and between the hours of ten and eleven o'clock in the evening, a messenger of Dodd's express entered the car and inquired of him if he had any baggage to be delivered.

The plaintiff thereupon handed to the messenger two railroad baggage-checks, one of which was for a gun-case containing a gun, and the other was a valise containing wearing apparel

and other articles. The messenger entered the numbers of the checks in pencil upon a card or receipt of which the following is a copy, omitting the advertisement in large type at the top of the paper.

```
                                      N. J. R. R. DEPOT, PIER 13 N. R., }
                                           No. 944 BROADWAY, N. Y.     }
                 DODD'S EXPRESS.

R                                                                           R
E    A  b                              F                                 E
C    r  e                              O                                 A
E    t  l                              R                                 D
I    i  o                                                                
V    c  w                              D
E    l  .                              O                               T
D    e                                 D                               H
     s                                 D                               I
O    o                                 '                               S
F    r                                 S
     C                                                                 R
M    h                                 E                               E
     e                                 X                               C
     c                                 P                               E
     k                                 R                               I
     s                                 E                               P
                                       S                               T
     n                                 S                               .
     u                                 .
     m
     b
     e
     r
     e
     d
```

☞ It is mutually agreed, and is part of the consideration of the contract, that DODD'S EXPRESS *shall not be liable* for merchandise or jewelry *contained in baggage*, nor for loss by fire, nor for an amount exceeding ONE HUNDRED DOLLARS upon any article unless specially agreed for in writing on the receipt *and the extra risk paid therefor*, nor for baggage to railroad, steamboat or steamship lines after the same has been left at the usual place of delivery to such lines, and the owner hereby agrees that Dodd's express *shall be liable only as above;* and it is further agreed that said express shall not be liable for loss or damage *unless the claim therefor* be made in writing at their principal office, with this receipt annexed, within thirty days thereafter.

At the time, the cars were running rapidly, the lights were mostly out, and the car in which the plaintiff was, was nearly dark, but there was one light at the end.

This light was insufficient to enable the plaintiff to read the printed matter at the place where he sat, and he did not read it.

The said Dodd's express received the valise and gun-case from the railroad company, and on the following day delivered the gun-case, but neglected to deliver the valise or any of its contents to the plaintiff. Evidence tending to show it was stolen or fell from one of the plaintiff's wagons, was given.

The valise and its contents were worth about $260. The referee found that the valise was stolen from the defendant's wagon.

The answer put in issue the negligence and the value of the property lost, and set up a special contract restricting the liability of the defendant.

The case was tried before a referee, who found, as conclusions of law,

1. The said baggage was received by the said Dodd's express, to be transported to plaintiff's residence, under and subject to the conditions expressed in said receipt, and not otherwise.

2. That, by the delivery to the plaintiff, and his acceptance of the said card or receipt, under the circumstances, he consented and agreed that said Dodd's express should not be liable for the loss of the said valise to an amount exceeding one hundred dollars.

3. That the plaintiff is entitled to recover from defendant only the sum of one hundred dollars and interest from October 17, 1866.

To all of which conclusions of law the plaintiff excepted.

From the judgment entered upon this report, an appeal was taken to the General Term, where the judgment was set aside and a new trial ordered; and from such order an appeal was taken to this court.

*Amasa J. Parker,* for the appellant, that a common carrier may restrict his liability. (1 Pars. on Cont., 711; 2 Greenl. Ev., § 215; *York Co.* v. *Central R. R. Co.,* 3 Wallace, 107.)

That the receipt formed a contract. (6 Blatchf., 64; 1 Kern., 485; 4 Keyes, 108; 100 Mass., 505; Abb., N. S., 289; 55 Barb., 137, 150, 151; 11 Cush., 97; 25 Eng. Law and Eq., 400.)

*Samuel Hand,* for the respondent, that Dodd's express was a common carrier. (23 N. Y., 335.)

That the receipt did not constitute a contract. (49 Barb., 21; id., 283; 34 How. Pr., 421; 2 Abb., N. S., 220; 4 Bosw., 225; 1 Kern., 485.)

That such contract would not, in any event, relieve from gross negligence. (42 N. Y., 212; 25 id., 196; 49 Barb., 30, 31; 6 How. U. S., 344; 32 Penn. St., 208.)

CHURCH, Ch. J.   The common-law liability of common carriers cannot be limited by a notice, even though such notice be brought to the knowledge of the persons whose property they carry. (*Dorr* v. *N. J. Steam Navigation Co.*, 1 Kern., 485.) But such liability may be limited by express contract. (Id.; *Bissell* v. *N. Y. Central R. R. Co.*, 442; *French* v. *Buffalo, N. Y. and Erie R. R. Co.*, 4 Keyes, 108.)

The principal question in this case is, whether there was a contract made between the parties limiting the liability of the defendants to a loss of $100 for the valise and its contents, which the plaintiff intrusted to their care.   A *fac simile* of the card upon which the alleged contract was printed has been furnished in the papers.   It does not appear, on examination, like a contract, and would not, from its general appearance, be taken for anything more than a token or check denoting the numbers of the checks received, to be used for identification upon the delivery of the baggage.   The larger portion of the printed matter is an advertisement, in large type.   The alleged contract is printed in very small type, and is illegible in the night by the ordinary lights in a railroad car, and is not at all attractive, while other parts of the paper are quite so.

Considerable stress is laid upon the fact that the words, " Read this receipt," were printed on the card in legible type. The receipt reads: " Received of M—— articles or checks numbered as below: 368 — 319." "For Dodd's Express." The blank is not filled, nor is the receipt signed by any one. The invitation is not to read the contract, but the receipt.   In order to read it, the paper must be turned sideways; and no one, thus reading the receipt, would suspect that it had any connection with the alleged contract, which is printed in different and very small type across the bottom of the paper.   It is no part of the receipt, is not connected with it, and is not referred to in any other part of the paper.   The defendants are dealing with all classes of community; and public policy, as well as established principles, demand that the utmost fairness should be observed.

This paper is subject to the criticism made by Lord ELLEN-BOROUGH, in *Butler* v. *Heane* (2 Camp., 415), in which he said, that " it called attention to everything that was attractive, and concealed what was calculated to repel customers;" and added: " If a common carrier is to be allowed to limit his liability, he must take care that any one who deals with him is fully informed of the limits to which he confines it." Nor did the nature of the business necessarily convey the idea of a contract to the traveler in such a manner as to raise the presumption that he knew it was a contract, expressive of the terms upon which the property was carried, or limiting the liability of the carrier. Baggage is usually identified by means of checks or tokens. And such a card does not necessarily import anything else. At all events, to have the effect claimed, the limitation should be as conspicuous and legible as other portions of the paper. In *Brown* v. *E. R. R. Co.* (11 Cush., 97), where the limitation was printed upon the back of a passenger ticket, the court say : " The party receiving it might well suppose that it was a mere check, signifying that the party had paid his passage to the place indicated on the ticket." In the cases of *Prentice* v. *Decker* (49 Barb., 21), and *Limburger* v. *Westcott* (id., 283), limitations were claimed upon the delivery of similar cards of another express company, and the court held, in both cases, that such delivery did not charge the persons receiving them with knowledge that they contained contracts. A different construction was put upon the delivery of a similar card, in *Hopkins* v. *Westcott* (6 Blatchf. R., 64); but I infer that the learned judge who delivered the opinion intended to decide that something short of an express contract will suffice to screen the carrier from his common-law liability, and that a notice, personally served, which could be read, would have that effect. The attention of the court does not seem to have been directed to the distinction between such a notice and a contract. The delivery and acceptance of a paper containing the contract may be binding, though not read, provided the business is of such a nature and the delivery is under such circumstances as to raise the presumption

that the person receiving it knows that it is a contract, containing the terms and conditions upon which the property is received to be carried. In such a case it is presumed that the person assents to the terms, whatever they may be. This is the utmost extent to which the rule can be carried, without abandoning the principle that a contract is indispensable. The recent case of *Grace* v. *Adams* (100 Mass., 560), relied upon by the defendant's counsel, was decided upon this principle. The plaintiff delivered a package of money to an express company, and took a receipt containing a provision exempting the company from liability for loss by fire; and the court held that he knew that the paper contained the conditions upon which the money was to be carried, and was, therefore, presumed to have assented to them, although he did not read the paper. The court say: "It is not claimed that he did not know, when he took it, that it was a shipping contract, or bill of lading." So, in *Van Goll* v. *The S. E. R. Co.* (104 Eng. Com. Law R., 75), the same principle was decided. WILLES, J., said: "Assuming that the plaintiff did not read the terms of the condition, it is evident she knew they were there." KEATING, J., said: "It was incumbent on the company to show that such was the contract." * * "I think there was evidence that the plaintiff assented to those terms."

As to bills of lading and other commercial instruments of like character, it has been held that persons receiving them are presumed to know, from their uniform character and the nature of the business, that they contain the terms upon which the property is to be carried. But checks for baggage are not of that character, nor is such a card as was delivered in this instance. It was, at least, equivocal in its character. In such a case a person is not presumed to know its contents, or to assent to them.

The circumstances under which the paper was received repel the idea of a contract. No such intimation was made to the plaintiff. He did not, and could not, if he had tried, read it in his seat. It is found that he might have read it at

the end of the car, or by the lights on the pier or in the ferry-boat; and it is claimed that he should have done so, and, if dissatisfied, should have expressed his dissent. If he had done so, and, in the bustle and confusion incident to such occasions, could have found the messenger and demanded his baggage, the latter might have claimed, upon the theory of this defence, that the contract was completed at the delivery of the paper, and that he had a right to perform it and receive the compensation.

It is impossible to maintain this defence without violating established legal principles in relation to contracts. It was suggested on the argument, that the stipulation to charge according to the value of the property is just and proper. This may be true; but the traveler should have something to say about it. The contract cannot be made by one party. If the traveler is informed of the charges graduated by value, he can have a voice in the bargain; but, in this case, he had none. Whilst the carrier should be protected in his legal right to limit his responsibility, the public should also be protected against imposition and fraud. The carrier must deal with the public upon terms of equality; and, if he desires to limit his liability, he must secure the assent of those with whom he transacts business.

My conclusion is, that no contract was proved.

1. Because it was obscurely printed.

2. Because the nature of the transaction was not such as necessarily charged the plaintiff with knowledge that the paper contained the contract.

3. Because the circumstances attending the delivery of the card repel the idea that the plaintiff had such knowledge, or assented in fact to the terms of the alleged contract.

The order granting a new trial must be affirmed, and judgment absolute ordered for the plaintiff, with costs.

All the judges concurring, upon the ground that no contract limiting the liability of defendants was proved.

Order affirmed, and judgment absolute for the plaintiff ordered.