WILLIAM E. KIRKLAND, RESPONDENT, v. WILLIAM B. DINSMORE, PRESIDENT, ETC., OF THE ADAMS EXPRESS COMPANY, APPELLANT.

*Express company — Receipt of — conditions in — not binding on party not reading or informed of them.*

When a person, from the nature of the business, the manner in which it is transacted, and all the circumstances surrounding it, knows, or has reason to believe, he is receiving a contract that will bind him, he will be bound whether he reads it or not. But where he may honestly and in good faith suppose he is receiving a check, token, receipt or voucher of some kind, or ticket, as evidence of money paid, he will not be bound by a contract attached thereto, forming no necessary part thereof, to which his attention is not called, and which, through ignorance, haste or inadvertence, he neglects to read or assent to.

A receipt, given by an express company, for a package of money received for transfer and delivery, which contains certain conditions and limitations of the liability of the company, *held*, not to bind, by the conditions contained therein, the party sending the package, when it appears that his attention was not called to the conditions, and that he did not know of them, and did not in any way assent to them.

APPEAL from a judgment, rendered for the plaintiff upon the decision of the court.

On or about March 25th, 1865, a package of $200 in money was delivered to the Adams Express Company as common-carriers, at Wilmington, N. C., by the plaintiff, to be transported to Hudson, N. Y. The agent of the company at Wilmington, upon receiving the package, delivered to the plaintiff a receipt. This receipt was produced upon this argument, under a stipulation of counsel, for the inspection of the court. The following is a copy of such receipt:

SCHEDULE A.

Great Eastern,                                    Southern Express
                              and
Western                                           Forwarders.
                *Adams Express Company.*

Form 5.                                    WILMINGTON,
$200.                                      *March* 25, 1865.

Received from ———
One Pa., sealed, and said to contain two hundred doll's, addressed Mrs. S. Kirkland, Hudson, N. Y.

Upon the special acceptance and agreement that this company is to forward the same to its agent nearest or most convenient to destination only, and there to deliver the same to other parties to complete the transportation, such delivery to terminate all liability of this company for such package, and also that this company are not to be liable in any manner or to any extent for any loss, damage or detention of such package or its contents, or of any portion thereof, occasioned by the acts of God, or by any person or persons acting or claiming to act in any military or other capacity in hostility to the government of the United States, or occasioned by civil or military authority or by the acts of any armed or other mob or riotous assembly, piracy or the dangers incident to a time of war, nor when occasioned by the dangers of railroad transportation or ocean or river navigation or by fire or steam.

In no event is this company to be liable for a greater sum than that above mentioned, nor shall it be liable for any such loss unless the claim therefor shall be made in writing at this office within thirty days from this date, in a statement to which this receipt shall be annexed.

For the Company,<br>ROBINSON.

The part of the receipt after the letters, N. Y., was in very fine and close print, and was partly written over by the signature " Robinson."

The package was lost by the accidental burning and sinking of the steamer Gen. Lyon, at sea, between Wilmington and New York.

The defense to this action rested solely upon the receipt, which was claimed to express the contract between the parties.

The plaintiff remained in the express office but a few moments after taking the receipt. While there he inclosed the receipt in a letter, already written to his mother, Sarah Kirkland.

The court found as facts among other things: " That the plaintiff did not read the receipt when it was delivered to him, nor was his attention called to its conditions or exceptions at that time by the agent of the company, or in any other manner, or by any other person; that he did not become acquainted with its con-

tents until the following fall or winter; that he thought it to be an ordinary receipt for the money, and not a contract; that when the receipt was handed to him, he looked at it to see if the amount was correct; that when he took the receipt, plaintiff supposed it was to show that the company received the money, and that the money was to be sent, and that he could present the receipt and get the money again; that he looked at the receipt to see where the money was to be carried, and to whom it was to be delivered; that he saw it was signed by the company's agent, and looked at the date also, but that no knowledge of the limitations, exceptions and conditions, printed at the bottom of the receipt, was at the time brought home to the plaintiff; nor did he ever, in any way, assent to such limitations, exceptions and condition." "That the amount due at this date (September 30, 1871), on the plaintiff's claim, is $291."

As conclusions of law, the court found: 1. "That the special clauses of the receipt exempting the company from liability except as therein stated, were not brought home to the knowledge of the plaintiff, or assented to by him, and cannot be deemed to be agreed upon by the parties."

2. "That the receipt delivered by the company to the plaintiff, did not, under the circumstances detailed in the evidence, constitute an express contract between the parties, according to all its terms as detailed at length in said instrument, limiting the common-law liability of the company as carriers in accordance with, and to the extent specified in, said instrument."

3. "That the defendant is liable to the plaintiff for the money so lost in its capacity as common-carrier, for the sum of $291, for which the plaintiff is entitled to judgment, besides the costs of this action."

*Charles M. Da Costa*, for the appellants.

*Horace R. Peck*, for the respondent.

BOARDMAN, J.:

The findings of facts accord entirely with the evidence. There is no conflict of evidence. Are the conclusions of law excepted to,

correct? It is conceded, a common-carrier. may limit his liability by special contract. Did the defendant do so in this case? Had the plaintiff known the contents of the receipt, and accepted the same with such knowledge, he would have been bound by its terms. In the absence of any proof upon that subject, it would be presumed the plaintiff knew the contents, and assented to the conditions therein contained. So the courts have repeatedly held.[*]

The Court of Appeals have not yet decided that a person may be bound by a contract of which he has no knowledge, and to which he has given no assent, contained in an express company's receipt.

In *Belger* v. *Dinsmore*,[†] there was no evidence of ignorance of contents of receipt, and therefore the presumption of knowledge, from acceptance, controlled the decision. Lott, Ch. C., puts the decision upon that express ground.[‡]

*Fibel* v. *Livingston* [§] is decided upon the authority of *Belger* v. *Dinsmore*, but fails to recognize the plain distinction suggested by Judge Lott, which should have prevented a reversal of the judgment.

In *Long* v. *N. Y. C. R. R. Co.*,[||] the contents of the receipt were known and discussed when taken.

In *Grace* v. *Adams Express Co.* [¶] Colt, J., says: "It is not claimed that he did not know, when he took it, *that it was a shipping contract or bill of lading.*" Hence the presumption of knowledge from his acceptance. Keating, J., says there was evidence " that the plaintiff assented to those terms." Such is not true here. In *Rice* v. *Dwight Man. Co.*,[**] plaintiff received the printed regulations, and *was notified that they contained the terms of the contract.* In *Warhus* v. *Bowery Savings Bank*,[††] plaintiff was unable to read English, but *signed* the rules and regulations of the bank. It was held he was bound by his signature, and that he was bound in law to know what he signed.

*Hopkins* v. *Westcott* [‡‡] unequivocally sustains the appellant's view. But it is condemned, as an authority, by the Court of

* Grace v. Adams, 100 Mass., 505; Belger v. Dinsmore, 51 N. Y., 166, 171.
† 51 N. Y., 166.    ‡ Id., p. 171.    § 64 Barb., 179.    || 50 N. Y., 76.
¶ 100 Mass., 505.    ** 2 Cush., 80.    †† 21 N. Y., 543.    ‡‡ 6 Blatchford, 64.

Appeals, in *Blossom* v. *Dodd*, [*] because it ignores the idea of a contract and of assent.

In many cases, the presumption of knowledge of the contents of a written instrument, is conclusive after acceptance. So, a person insured is bound by the terms of his policy, after its acceptance, whether read or not. So, the grantee of a deed may be bound by its conditions and covenants, though he may not have signed or read it, if he has accepted the deed. So of persons knowingly taking shipping contracts and bills of lading from common-carriers. In all these cases the parties know they are making or accepting and agreeing to contracts when they receive the instruments in writing. The law imposes upon them the duty of then determining whether the contract is duly set out, and of correcting it if wrong. If they willfully or negligently omit to read it, they must abide the consequences.

But upon the facts proved and found by the court, this case is analogous to *Blossom* v. *Dodd*. [†] The plaintiff supposed he was getting an evidence that he had deposited so much money with defendant to be delivered to another—something like a baggage-check, or a token taken of an express company in lieu of a baggage-check, or a mere naked receipt for the package, showing where it was to be carried and to whom delivered—he asked for nothing else; he had no notice that anything else was in it. His attention was not called to the finely printed matter, nor was he informed that he would assent to it by accepting it. Immediately after its receipt he inclosed it in a letter already written, and forwarded it to the party to whom the money was to be delivered.

With proof that the plaintiff supposed it was a naked receipt; that he did not know it was a contract; that he did not read the printed matter, or assent to the conditions therein stated, the court cannot hold the defendant exempt from responsibility without holding the plaintiff responsible upon a contract, of which he never knew, and to which he never assented. The following cases are inconsistent with the defendant's views and theory. [‡] Some of

---

[*] 43 N. Y., 264, 268.                [†] *Ante.*

[‡] Limburger v. Westcott, 49 Barb., 283; Rawson v. Penn. R. R. Co., 48 N. Y., 212; Blossom v. Dodd, *ante;* Sunderland v. Westcott, 40 How., 468; Nevins v. Bay State Co., 4 Bosw., 225; Hollister v. Nowlen, 19 Wend., 234.

these cases apply only to notices, and are not, therefore, applicable. But the strange consequence follows, from the defendant's claim, that a notice, directly given to a party, is worthless, while the same facts put in the form of a contract, signed by the carrier and accepted by the party, though in entire ignorance of its character and nature, are binding upon him. The cases of *Perkins* v. *N. Y. C. R. R. Co.*,* *Smith* v. *Same*, † and *Bissell* v. *Same*,‡ are all cases of express contract—two of them in writing, signed by the parties receiving the pass—and can have no application to this case.

The result of this examination leads to this conclusion: When a person, from the nature of the business, the manner in which it is transacted, and all the circumstances surrounding it, knows, or has reason to believe, he is receiving a contract that will bind him, he will be bound whether he reads it or not. But where he may honestly, and in good faith, suppose he is receiving a check, token, receipt or voucher of some kind, or ticket, as evidence of money paid, he will not be bound by a contract attached thereto, forming no necessary part thereof, to which his attention is not called, and which, through ignorance, haste or inadvertence, he neglects to read or assent to.

The judge having found as facts: "That the plaintiff did not read the receipt when it was delivered to him, nor was his attention called to its conditions or exceptions at that time by the agent of the company, or in any other manner, or by any other person; that he did not become acquainted with its contents until the following fall or winter; that he thought it to be an ordinary receipt for money, and not a contract; that when the receipt was handed to him, he looked to see if the amount was correct; that when he took the receipt, plaintiff supposed it was to show that the company received the money, and that the money was to be sent, and that he could present the receipt and get the money again; that he looked at the receipt to see where the money was to be carried, and to whom it was to be delivered; that he saw that it was signed by the company's agent, and looked at the date also, but that no knowledge of the limitations, exceptions and conditions, printed at the bottom of the receipt, was at the time brought home to the plaintiff, nor did he ever, in any way, assent to such

* 24 N. Y., 196.    † 24 N. Y., 222.    ‡ 25 N. Y., 442.

limitations, exceptions and conditions;" and such facts being warranted by the evidence, the legal conclusion justly follows, that the defendant was not exempted from liability, upon the ground of an express contract between the parties, creating such exemption.

No regard is had to the element of fraud or imposition, since no such facts are found, and no evidence is returned, that would seem to justify findings against the defendant in those respects.

The judgment should be affirmed with costs.

MILLER, P. J., concurred; BOOKES, J., dissented.

Judgment affirmed, with costs.

