KIRKLAND v. DINSMORE, appellant.

*Common carrier — conditions in receipt given by — when not a contract.*

Plaintiff delivered to an express company a package of money to be trans-
ported, and received a receipt containing a printed condition that the com-
pany would not be liable for loss " occasioned by the dangers of railroad
transportation, or ocean or river navigation, or by fire or steam." The pack-
age was lost by the accidental burning and sinking of a vessel at sea. Plain-
tiff when he took the receipt supposed it was a naked receipt, he did not
know it was a contract, did not read the conditions or assent to them. *Held,*
that the receipt did not exempt the company from liability.

APPEAL from a judgment rendered for the plaintiff upon the
decision of the court.

The action was brought by William E. Kirkland against William
B. Dinsmore, President of the Adams Express Company. On or
about March 25, 1865, a package of $200 in money was delivered
to the Adams Express Company as common carriers, at Wilmington,
N. C., by the plaintiff, to be transported to Hudson, N. Y. The
agent of the company at Wilmington, upon receiving the package,
delivered to the plaintiff a receipt. This receipt was produced on
this argument under a stipulation of counsel, for the inspection of
the court : The following is a copy of such receipt :

"ADAMS EXPRESS COMPANY.

*Great Eastern, Western & Southern Express forwarders.*

(Form 5.)

$200.                              WILMINGTON, *Mar. 25, 1865.*

Received from—
One Pa., sealed, and said to contain two hundred doll's, ad-
dressed Mrs. S. Kirkland, Hudson, N. Y.

Upon the special acceptance and agreement that this company is
to forward the same to its agent nearest or most convenient to des-
tination only, and there to deliver the same to other parties to com-
plete the transportation, such delivery to terminate all liability of this
company for such package, and also that this company are not to be
liable in any manner or to any extent for any loss, damage or deten-

tion of such package or of its contents, or of any portion thereof, occasioned by the acts of God, or by any person or persons acting or claiming to act in any military or other capacity in hostility to the government of the United States, or occasioned by civil or military authority, or by the acts of any armed or other mob or riotous assembly, piracy or the dangers incident to a time of war, nor when occasioned by the dangers of railroad transportation, or ocean or river navigation, or by fire or steam.

In no event is this company to be liable for a greater sum than that above mentioned; nor shall it be liable for any such loss unless the claim therefor shall be made in writing at this office within thirty days from this date in a statement to which this receipt shall be annexed.

Freight.                                    For the Company,
                                                 ROBINSON."

The part of the receipt after the letters "N. Y.," was in very fine and close print and was partly written over by the signature "Robinson." The package was lost by the accidental burning and sinking of the steamer "General Lyon," at sea, between Wilmington and New York. The defense to this action rested solely upon the receipt, which was claimed to express the contract between the parties. The plaintiff remained in the express office but a few moments after taking the receipt. While there he inclosed the receipt in a letter already written to his mother, Sarah Kirkland.

The court found as facts, among other things, "2. That the plaintiff did not read the receipt when it was delivered to him, nor was his attention called to its conditions or exceptions at that time by the agent of the company, or in any other manner or by any other person; that he did not become acquainted with its contents until the following fall or winter; that he thought it to be an ordinary receipt for the money, and not a contract; that when the receipt was handed to him, he looked at it to see if the amount was correct; that when he took the receipt, plaintiff supposed it was to show that the company received the money and that the money was to be sent, and that he could present the receipt and get the money again; that he looked at the receipt to see where the money was to be carried and to whom it was to be delivered; that he saw that it was signed by the company's agent, and looked at the date also, but that no knowledge of the limitations, exceptions and conditions printed

at the bottom of the receipt was at the time brought home to the plaintiff, nor did he ever in any way assent to such limitations, exceptions and conditions." "7. That the amount due at this date, (Sept. 30, 1871), on the plaintiff's claim, is two hundred and ninety-one dollars."

As conclusions of law, the court found, 1. "That the special clauses of the receipt exempting the company from liability, except as therein stated, were not brought home to the knowledge of the plaintiff, or assented to by him, and cannot be deemed to be agreed upon by the parties." 2. "That the receipt delivered by the company to the plaintiff did not, under the circumstances detailed in the evidence, constitute an express contract between the parties, according to all its terms as detailed at length in said instrument, limiting the common-law liability of the company as carriers in accordance with and to the extent specified in said instrument." 3. That the defendant is liable to the plaintiff for the money so lost in its capacity as common carrier, for the sum of $291, for which the plaintiff is entitled to judgment, besides the cost of this action.

*Blatchford, Seward & Griswold*, and *Chas. M. Da Costa*, for appellant. An agreement limiting the liability of the company as carrier is valid. *Wolfe* v. *Myers*, 3 Sandf. 7; *Newstadt* v. *Adams*, 5 Duer, 43; *Moriarty* v. *Hamden's Express Co.*, 1 Daly, 221; *Dorr* v. *N. J. S. N. Co.*, 11 N. Y. 485; *French* v. *B. N. Y. & E. R. R. Co.*, 4 Keyes, 108; *York Co.* v. *Central Railway*, 3 Wall. 107; *Kalman* v. *U. S. Express Co.*, 13 N. Y. 205; *Grace* v. *Adams Express Co.*, 100 Mass. 505; *Maghee* v. *Camden & Amboy R. R. Co.*, 45 N. Y. 514, 518; *Lawrence* v. *N. Y. P. & B. R. R. Co.*, 6 Conn. 63; *Guillaume* v. *Hamburgh & Am. Packet Co.*, 42 N. Y. 212; *Steinweig* v. *Erie Railway Co.*, 43 id. 123; *Pendergast* v. *Adams Exp. Co.*, 101 Mass. 120; *Lamb* v. *Camden and Amboy R. R. Co.*, 46 N. Y. 271; *Cochran* v. *Dinsmore*, 49 id. 249; *Westcott* v. *Fargo*, 6 Lans. 319; *Farnham* v. *C. and A. R. R. Co.*, 55 Penn. St. 53; *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 76; *Belger* v. *Dinsmore*, 51 id. 166. It is no answer that plaintiff did not read the conditions. *Grace* v. *Adams Express Co.*, 100 Mass. 505; *Blossom* v. *Dodd*, 43 N. Y. 264; *Rice* v. *Dwight Manufacturing Co.*, 2 Cush. 87; *Hopkins* v. *Westcott*, 6 Blatch. 64; *Collender* v. *Dinsmore* (N. Y. Ct. App. 1873); *Maguire* v. *Dinsmore* (N.Y. Ct. App. 1874); *Fibel* v. *Livingston*, 64 Barb. 179.

*Horace R. Peck,* for respondent. A notice or statement does not create an express contract. *Nevins* v. *Bay State Steamboat Co.,* 4 Bosw. 225; *Prentice* v. *Decker,* 49 Barb. 21; *Limburger* v. *Westcott,* id. 283; *Rawson* v. *Pennsylvania R. R. Co.,* 48 N. Y. 212 ; *Westcott* v. *Fargo,* 63 Barb. 349.

BOARDMAN, J. The findings of facts accord entirely with the evidence. There is no conflict of evidence.

Are the conclusions of law excepted to correct? It is conceded a common carrier may limit his liability by special contract. Did the defendant do so in this case? Had the plaintiff known the contents of the receipt and accepted the same with such knowledge, he would have been bound by its terms. In the absence of any proof upon that subject, it would be presumed the plaintiff knew the contents and assented to the conditions therein contained. So the courts have repeatedly held. *Grace* v. *Adams,* 100 Mass. 505; *Belger* v. *Dinsmore,* 51 N. Y. 166, 171. The court of appeals have not yet decided that a person may be bound by a contract of which he has no knowledge, and to which he has given no assent, contained in an express company's receipt. In *Belger* v. *Dinsmore,* 51 N. Y. 166, there was no evidence of ignorance of contents of receipt, and therefore the presumption of knowledge from acceptance controlled the decision. LOTT, Ch. C., puts the decision upon that express ground at p. 171. *Fibel* v. *Livingston,* 64 Barb. 179, is decided upon the authority of *Belger* v. *Dinsmore,* but fails to recognize the plain distinction suggested by Judge LOTT, which should have prevented a reversal of the judgment. In *Long* v. *N. Y. Cent. R. R. Co.,* 50 N. Y. 76, the contents of the receipt were known and discussed when taken. In *Grace* v. *Adams Express Co.,* 100 Mass. 505, COLT, J., says: "It is not claimed that he did not know when he took it *that it was a shipping contract or bill of lading.*" Hence the presumption of knowledge from his acceptance. KEATING, J., says there was evidence "that the plaintiff assented to those terms." Such is not true here. In *Rice* v. *Dwight Manuf. Co.,* 2 Cush. 87, plaintiff received the printed regulations, and *was notified that they contained the terms of the contract.* In *Warhus* v. *Bowery Savings Bank,* 21 N. Y. 543, plaintiff was unable to read English, but *signed* the rules and regulations of the bank. It was held he was bound by his signature, and that he was bound in law to know what he signed.

---

*Hopkins* v. *Westcott*, 6 Blatch. 64, unequivocally sustains the appellant's view. But it is condemned as an authority by the court of appeals in *Blossom* v. *Dodd*, 43 N. Y. 264, 268, because it ignores the idea of a contract and of assent.

In many cases the presumption of knowledge of the contents of a written instrument is conclusive after acceptance. So a person insured is bound by the terms of his policy, after its acceptance, whether read or not. So the grantee of a deed may be bound by its conditions and covenants, though he may not have signed or read it, if he has accepted the deed. So of persons knowingly taking shipping contracts and bills of lading from common carriers. In all these cases, the parties know they are making or accepting and agreeing to contracts when they receive the instruments in writing. The law imposes upon them the duty of thus determining whether the contract is duly set out, and of correcting it if wrong. If they willfully or negligently omit to read it, they must abide the consequences.

But upon the facts proved and found by the court, this case is analogous to *Blossom* v. *Dodd*, *supra*. The plaintiff supposed he was getting an evidence that he had deposited so much money with the defendant to be delivered to another, something like a baggage check or a token taken of an express company in lieu of a baggage check or a mere naked receipt for the package showing where it was to be carried and to whom delivered. He asked for nothing else. He had no notice that any thing else was in it. His attention was not called to the finely printed matter, nor was he informed that he would assent to it by accepting it. Immediately after its receipt, he inclosed it in a letter already written and forwarded to the party to whom the money was to be delivered. With proof that the plaintiff supposed it was a naked receipt; that he did not know it was a contract; that he did not read the printed matter or assent to the conditions therein stated, the court cannot hold the defendant exempt from responsibility without holding the plaintiff responsible upon a contract of which he never knew, and to which he never assented. The following cases are inconsistent with the defendant's views and theory. *Limburger* v. *Westcott*, 49 Barb. 283; *Rawson* v. *Penn. R. R. Co.*, 48 N. Y. 212; *Blossom* v. *Dodd*, *supra;* *Sunderland* v. *Westcott*, 40 How. 468; *Nevins* v. *Bay State Co.*, 4 Bosw. 225; *Hollister* v. *Nowlen*, 19 Wend. 234. Some of these cases apply only to notices, and are not therefore applicable.

But the strange consequence follows from defendant's claim that a notice directly given to a party is worthless, while the same facts put in the form of a contract, signed by the carrier and accepted by the party, though in entire ignorance of its character and nature, is binding upon him. The cases of *Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y. 215; *Smith* v. *N. Y. C. R. R. Co.*, id. 223, and *Bissell* v. *N. Y. C. R. R. Co.*, 25 id. 445, are all cases of express contract, two of them in writing signed by the parties receiving the pass, and can have no application to this case.

The result of the examination leads to this conclusion : Where a person from the nature of business, the manner in which it is transacted, and all the circumstances surrounding it, knows or has reason to believe he is receiving a contract that will bind him, he will be bound whether he reads it or not. But where he may honestly and in good faith suppose he is receiving a check, token, receipt or voucher of some kind, or ticket as evidence of money paid, he will not be bound by a contract attached thereto, forming no necessary part thereof to which his attention is not called, and which through ignorance, haste or inadvertence he neglects to read or assent to.

The judge having found as facts — " That the plaintiff did not read the receipt when it was delivered to him, nor was his attention called to its conditions or exceptions at that time by the agent of the company, or in any other manner, or by any other person ; that he did not become acquainted with its contents until the following fall or winter ; that he thought it to be an ordinary receipt for money and not a contract ; that when the receipt was handed to him he looked to see if the amount was correct ; that when he took the receipt plaintiff supposed it was to show that the company received the money, and that the money was to be sent, and that he could present the receipt and get the money again ; that he looked at the receipt to see where the money was to be carried and to whom it was to be delivered ; that he saw that it was signed by the company's agent, and looked at the date also, but that no knowledge of the limitation, exceptions and conditions printed at the bottom of the receipt, was at that time brought home to the plaintiff, nor did he ever in any way assent to such limitations, exceptions and conditions ;" and such facts being warranted by the evidence, the legal conclusion justly follows that the defendant was not exempted from liability upon the ground of an express contract between the parties creating such exemption.

Kirkland v. Dinsmore.

No regard is had to the element of fraud or imposition since no such facts are found and no evidence is returned that would seem to justify findings against the defendant in those respects.

The judgment should be affirmed, with costs.

*Judgment affirmed.*

NOTE.—The principal case presents the question whether a person who accepts a receipt for a package delivered to an express company is bound by the reasonable conditions therein expressed, without reading the conditions or being made aware of the nature of the receipt. In other words, whether the person receiving the receipt is bound to know its contents, and is conclusively presumed to know and assent to its terms. The principal case decides this question in the negative.

In *Buckland* v. *Adams Express Co.*, 97 Mass. 124, it appeared that plaintiff bought goods at a factory and left them in charge of a workman at the factory to be delivered to an express company, which was accordingly done, and the workman was given a receipt restricting the company's liability. The company received like packages from plaintiffs about that time without giving any receipts. *Held*, that plaintiffs were not bound by the limitations in the receipt, on the ground that plaintiffs, under the peculiar facts of the case, and not having seen or read the receipt, could not be deemed to have agreed to the conditions. In *Perry* v. *Thompson*, 98 Mass. 249, it appeared that neither the plaintiffs nor their servants had any actual knowledge of the contents of the receipt. The course of dealing of the parties had not been uniform. Property had been received and carried by the express company without any notice relative to the liability of the company having been given. In the present instance the goods were delivered to the company before the receipt was given, and when it was subsequently sent to plaintiffs a portion of the limitation contained in the receipt was covered with a revenue stamp. *Held*, that under such circumstances a jury could not properly find any assent by the plaintiffs to the terms of the receipt. See, also, *Fillebrum* v. *Grand Trunk Railway Co.*, 55 Me. 462.

But *Grace* v. *Adams*, 100 Mass. 505 ; S. C., 1 Am. Rep. 131, hardly sustains the principal case. In *Grace* v. *Adams* the facts were almost identical with those of the principal case. The package was money delivered to the Adams Express Company at Wilmington, N. C., and the receipt was given and signed by the same agent of the company (Robinson) who signed the receipt in the principal case. The package was lost at sea by a peril from liability for which the receipt exempted the company. COLT, J., who delivered the opinion, said : "The acceptance of it (the receipt) by the plaintiff, at the time of the delivery of his package, without notice of his dissent from its terms, authorized the defendants to infer assent by the plaintiff. It was his only voucher and evidence against the defendants. It is not claimed that he did not know, when he took it, that it was a shipping contract or bill of lading." But, if it had been so claimed, the judge's subsequent remarks would have effectually disposed of that claim. He says, "It was his duty to read it. The law presumes, in the absence of fraud or imposition, that he did read it, or was otherwise informed of its contents, and was willing to assent to its terms without reading it. Any other rule would fail to conform to the experience of all men. Written contracts are intended to preserve the exact terms of the obligations assumed, so that they may not be subject to the chances of a want of recollection or an intentional misstatement. The defendants have a right to this protection, and are not to be deprived of it by the willful negligent omission of the plaintiff to read the paper." From this case the inference is inevitable that a party who accepts a receipt from an express company is conclusively presumed to have assented to its terms; and he is estopped from showing that he did not read the receipt, and was not aware of its contents.

In *Belger* v. *Dinsmore*, 51 N. Y. 166 ; S. C., 10 Am. Rep. 575, the precise question raised in the principal case was not specifically decided. In *Belger* v. *Dinsmore* there was no positive proof that the person accepting the receipt did not read it, or become aware of its contents. But the court held that it was a *presumption of law* (not a pre-

sumption of fact) that a party receiving an instrument of the kind is acquainted with its contents, and assents to the conditions therein. There is a very strong inference to be drawn from this case that a party receiving and carrying away an "express" receipt is estopped from showing that he did not read it or become acquainted with its contents and conditions.

An analogous question arises in case of printed conditions in blanks for telegraph messages filled up and signed by the sender. Although there is a more active assent on the part of the sender. In *Western Union Telegraph Co.* v. *Carew*, 15 Mich. 525, it. was *held* that a party who writes his message on a blank bearing the direction "Send the following message, without repeating, subject to above condition and agreement ndorsed on back," he thereby accepts the conditions whether he reads them or not. In *Wolf* v. *Western Union Telegraph Co.*, 62 Penn. St. 83, it was *held* that a party having signed the message was presumed to be aware of the printed conditions thereon. In *Breece* v. *Telegraph Co.*, 48 N. Y. 132, LOTT, Ch. C., said : "A party using such a blank and writing his dispatch thereon assents to the terms and conditions on which it is to be sent. If he omits to read or become informed of them, it is his own fault." EARL, C., also said that under the circumstances, "and upon the ordinary principle applicable to the doctrine of *estoppel in pais*, he must be held estopped from denying or disputing the agreement." In this case, *Grace* v. *Adams, supra*, was cited as analogous. — REP.