In the Matter of the Arbitration between ROBERT GOLD et al., Doing Business as SUNRAY CARPET CLEANERS, Petitioners, and A. BROIDO, INC., Respondent.

Supreme Court, Trial Term, New York County, October 23, 1945.

*Martin Kingsley* for petitioners.

*Abraham Broido* for respondent.

BLAIR, J. The petitioner's application to Special Term under section 1450 of the Civil Practice Act having been opposed by an answer denying consent to submit differences to arbitration, the Special Term referred the issues to Trial Term to determine whether the instrument in question represented a contract between the parties, and whether the person signing on behalf of respondent had authority so to do (N. Y. L. J., May 22, 1945, p. 1949, col. 7).

The respondent is a dealer in rugs and carpets and from time to time receives such articles from customers to be cleaned and repaired. Under instructions from one of its officers, its bookkeeper, Bessie Suberman, requested petitioners to call for a number of rugs. She obtained a receipt (captioned " Customer's Contract ") from the driver employed by petitioners, and initialed the same paper as evidence of her employer, the respondent's, consent to its terms. However, the document was much more than a receipt. It contained these words:

For the protection of our customers we insure the property received f om them against loss by fire, burglary, theft and the perils of transportation, while in our possession for an amount not exceeding the actual cash value of the property insured at the time of loss with proper deduction for depreciation, but under no conditions exceeding the following limits: $.50 per sq. ft. on any Domestic Rug or Carpet. * * * Any controversy or claim arising out of or for the breach of this agreement shall be settled by arbitration under the arbitration law of the State of New York in

accordance with the rules of the American Arbitration Association, provided however, that upon any such arbitration the arbitrator may not vary, modify or disregard the foregoing provision. Receipt of a duplicate of this contract is hereby acknowledged and conditions accepted.

These words are printed in what appears to be 8-point type, or type slightly smaller and closer than that employed in memorandum decisions in the back of current volumes of our Appellate Division reports.

In a blank space preceding these words and captioned "Remarks" Miss Suberman had written, in pencil: "Tack wash domestic — no shrink — clean & store". To this extent it is clear that Miss Suberman acted within her authority, and showed an awareness that the document was not only a receipt but the evidence of what the petitioners were being asked to do to the rug. It is equally clear that petitioners assented to these terms when its driver signed the document on its behalf. But the question of assent to the quoted clauses, including the arbitration clause, is one not so easy of determination.

It is significant that both parties regarded the agreement as one so simple and so free from debatable items as to be capable of execution by subordinate employees — the petitioners' driver and the respondent's bookkeeper. From this factor, it would seem to follow that only such portions of the document were assented to by either party as might have been intelligently handled by such subordinates. It is questionable whether either the driver or the bookkeeper could, if asked, have defined the words "arbitration clause". There was nothing about the respondent's business, and the position in it occupied by Miss Suberman, the bookkeeper, justifying the implication of authority, "from that expressly given, to make collateral agreements not usual or reasonably necessary to the business intrusted to the agent's care." (2 C. J. S., Agency, § 104, p. 1245.) An agreement to arbitrate is a collateral agreement of that character. I conclude, therefore, from the circumstances surrounding the execution of the document and the delivery to each party of duplicate copies thereof, that it was intended to be effective as a receipt only, in the ordinary sense in which a subordinate employee of a small commercial concern would understand that word.

There is a second obstacle to the success of petitioners' application. Even if the respondent's president instead of its bookkeeper had signed the document in question, the clause would fail because there was no reason to suspect its existence and because it was not brought to the respondent's attention.

In *Blossom* v. *Dodd* (43 N. Y. 264) the court struck out a

limitation of liability printed on a receipt for baggage given to a railroad passenger by an expressman's agent who boarded a train as it approached a terminal. The court said (p. 268): "This paper is subject to the criticism made by Lord ELLEN-BOROUGH, in *Butler* v. *Heane* (2 Camp., 415), in which he said, that ' it called attention to everything that was attractive, and concealed what was calculated to repel customers; ' and added: ' If a common carrier is to be allowed to limit his liability, he must take care that any one who deals with him is fully informed of the limits to which he confines it.' Nor did the nature of the business necessarily convey the idea of a contract to the traveler in such a manner as to raise the presumption that he knew it was a contract, expressive of the terms upon which the property was carried, or limiting the liability of the carrier. Baggage is usually identified by means of checks or tokens. And such a card does not necessarily import anything else. At all events, to have the effect claimed, the limitation should be as conspicuous and legible as other portions of the paper." In other words, when a bailee relies on a special and unusual feature of the contract altering the normal incidents of the bailment, he must show that such feature was brought to the bailor's attention upon the signing of the contract. (*Healy* v. *New York Central & H. R. R. R. Co.*, 153 App. Div. 516, affd. 210 N. Y. 646; *Sandler* v. *Commonwealth Station Co.*, 307 Mass. 470; *Dodge* v. *Nashville, C. & St. L. Ry. Co.*, 142 Tenn. 20; *Dale* v. *See*, 51 N. J. L. 378.)

The excerpt from *Butler* v. *Heane* (2 Camp. 415) in the opinion I have quoted is pertinent to the case at bar, since the provisions in fine print began with the disarming words: " For the protection of our customers * * *." Therein may be found a special inducement to respondent's bookkeeper to refrain from perusing the clauses before initialing the contract.

I am further of the opinion that an agreement to arbitrate should not be imposed on a party lightly, and by virtue of a consent which rests upon a bold and unrealistic presumption rather than upon actuality. " No one is under a duty to resort to arbitration unless by clear language he has so agreed " (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130, 132). This would also seem to be the inarticulate major premise behind *Matter of Tanenbaum Textile Co.* v. *Schlanger* (287 N. Y. 400; and see *Matter of Marchant* v. *Mead-Morrison M. Co.*, 252 N. Y. 284, appeal dismissed *sub nom. Mead-Morrison Mfg. Co.* v. *Marchant*, 282 U. S. 808; *Matter of Edgar Const. Corp.* v. *Ward Foundation Corp.*, 255 App. Div. 291).

The petitioners, relying on *Ufland & Co.* v. *McMahon* (215 App. Div. 267) argue that when the respondent sued petitioners in the City Court for loss of the rug, it impliedly ratified the contract which its bookkeeper had signed. It seems to me that when a party to a contract containing an arbitration clause sues in court for breach of the contract, he has thereby not ratified the clause but, on the contrary, has repudiated it.

The issues referred to me by the Justice at Special Term are accordingly determined by the following findings of fact: (1) The person signing on behalf of respondent had no authority to make a contract to the effect that differences between petitioners and respondent should be submitted to arbitration; and (2) the instrument in question did not constitute a contract between the parties to submit their differences to arbitration. The conclusion of law upon the foregoing is that the application for an order directing an arbitration should be denied.

The matter is respectfully remitted to Special Term, Part I, for further proceedings.