Milton" Mollee", J.
Plaintiffs (a carpenter and a laborer) brought an action to recover for personal injuries sustained by reason of the defendant’s breach of an implied warranty of fitness for use, which the plaintiffs alleged was made by the defendant lumber dealer when it sold scaffold lumber to the plaintiffs ’ employer.
This action was tried before the court and a jury. Pursuant to section 1-201 (subd. [10]) of the Uniform Commercial Code, the court reserved to itself for determination the question as to whether the defendant’s written disclaimer of liability contained on the defendant’s invoice was a valid disclaimer within the purview of the Uniform Commercial Code (§ 2-316, subd. [2], and § 1-201, subd. [10]). If that question is answered in the affirmative, the next question for the court’s determination is whether the defendant may assert this disclaimer as against the plaintiffs, who were not parties to the contract of sale. The court instructed the jury that in order to render a verdict for the plaintiffs they must answer all the following seven questions in the affirmative:
1. Did the defendant have reason to know the particular purpose for which the lumber was required?
2. Did the buyer (plaintiffs’ employer) rely on defendant seller’s skill or judgment to select or furnish lumber that would be reasonably fit for use as a scaffold and did the defendant have reason to know that the buyer was relying on his skill or judgment?
3. Was the lumber in a defective condition on the date it was delivered to plaintiffs’ employer?
4. Was the lumber properly used in erecting the .scaffold?
5. Did the plaintiffs sustain personal injuries as a result of an unfit, defective condition of the lumber and without any misuse or mishandling of the lumber on the part of plain *501 tiffs or plaintiffs’ employer or coemployees contributing to such injury?
6. Did the defendant’s resultant breach of implied warranty of fitness for the particular purpose cause the injury to plaintiffs ?
7. Was the alleged defective condition of the lumber a substantial factor in causing plaintiffs’ injuries?
The jury was also instructed that an implied warranty of fitness for use may be excluded or modified by a course of dealing or course of performance or usage of the trade and that it was for the jury to determine whether the usage of the trade was to exclude the warranty which the plaintiffs claim was made in the instant case.
At the conclusion of their deliberation the jury returned a verdict in favor of both plaintiffs as against the defendant lumber dealer.
The defendant’s invoice is contained on a paper measuring 7 inches x 8% inches in size. It contains approximately 12 different types or sizes of printing in identifying the defendant and its business, in advertising the defendant’s products, and in describing two separate disclaimers made by the defendant. The two disclaimers, consisting of three lines of printing, appear in the lower portion of the invoice. The first disclaimer, which is not here pertinent except for the purpose of comparison as to the type and size of the printing used, consists of a single line of printing and warns the purchasers in large black capital letters, partly underscored, about % inch in height, as follows:
“ NO CLAIMS ALLOWED UNLESS MADE IMMEDIATELY AFTER DELIVERY.”
The second disclaimer, which is before the court, appears underneath such printing. Each line is about four inches in length. This disclaimer is preceded and captioned in the left-hand margin by the word “NOTE ”, also in large black letters about 3/16 of an inch. The printing used for the disclaimer itself consists of much smaller and much lighter lettering, a finer print than that used by the first disclaimer. The printing is about 1/16 of an inch in height and is the smallest of any printing found on the entire invoice. The 35 words of such disclaimer read as follows:
The purchaser shall be deemed to have accepted these goods as is, the seller having made no representations or warranties whatever with respect to their quality, fitness for use, or in any other regard thereto.
*502 Section 2-316 (subd. [2]) of the Uniform Commercial Code provides in part that “ to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.” (Emphasis supplied.) “ Conspicuous ” is defined under section 1-201 (subd. [10]) of the Uniform Commercial Code as follows: ‘ ‘ A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. # * # Language in the body of a form is ‘ conspicuous ’ if it is in larger or other contrasting type or color.”
It is an established principle that a notice of a disclaimer of a warranty printed in small lettering, or in fine print, without more, has been held insufficient to excuse a seller’s breach of warranty (Landreth v. Wyckoff, 67 App. Div. 145 [involving an invoice]; see, also, Bell v. Mills, 78 App. Div. 42, 44, and Blossom v. Dodd, 43 N. Y. 264, 268). In the court’s opinion, while the print used in the word “ NOTE ”, which precedes the subject disclaimer, may be considered conspicuous, the message which that word conveys .does not advise a reasonable person that the ensuing tiny print contains a disavowal of the seller’s responsibility regarding the fitness for use of the materials sold.
In the court’s view, the printing of the subject disclaimer in the smallest lettering of all the printing used in the invoice, as above described, did not make such printing “ as conspicuous and legible as other portions of the paper ” (Blossom v. Dodd, supra, p. 268) and cannot, therefore, be construed as having been “ so written that a reasonable person against whom it is to operate ought to have noticed it.” (Uniform Commercial Code. § 1-201, subd. [10].) (See Minikes v. Admiral Corp., 48 Misc 2d 1012; see, also, 17 ALR 3d 1010, pp. 1078, 1079.)
The court is convinced that the defendant, in printing the word “ NOTE ” in large letters and then printing a disclaimer in tiny fine print, was clearly engaged in a spurious attempt to meet the letter of the law while obviously circumventing the intent of this law. Where, as here, we are dealing with a product such as lumber which is to be used for scaffolding purposes, and, therefore, inherently dangerous to its users, a purported disclaimer of warranty of fitness for use should clearly meet the statutory requirements in order to be effective.
The court having thus reached the determination that the disclaimer was invalid as a matter of law as against the purchaser, plaintiffs’ employer, it, therefore, becomes unnecessary for the court to consider the question as to whether a valid disclaimer as against the purchaser would have been effective against the purchaser’s employees.
*503 Defendant also made a motion to set aside the verdicts as being excessive. The court finds that there was sufficient medical testimony presented to the jury, if it believed such testimony to be credible, to sustain the jury verdicts in the sum of $75,000 for the plaintiff Velez, and the sum of $50,000 for the plaintiff Prestigiacomo. In Banks v. Begell (1 A D 2d 726, affd. 2 N Y 2d 736), the Appellate Division stated, in reversing a Trial Judge’s order setting aside a verdict as excessive unless plaintiff stipulated to a reduction: ‘1 While the verdict may appear to be liberal we can see no substantial basis for characterizing it as so excessive to shock the conscience. The amount of compensatory damages in a case of this kind is peculiarly within the province of a jury to determine, and even though the trial court may have a different opinion the jury’s verdict should not be set aside except for clear and convincing reasons that are apparent from the record itself. ’ ’ (See, also, Rice v. Ninacs, 34 A D 2d 388.)