GEORGE WESTCOTT et al., Respondents, *v.* WILLIAM G.
FARGO, President, etc., Appellant.

The president or treasurer of a joint stock company or association con-
sisting of seven or more members, is, under the provisions of the act
in relation to suits by and against such companies (chap. 258, Laws of
1849, amended by chap. 153, Laws of 1853), and under the provisions
of the State Constitution relative to corporations (art. 8), to be regarded
for the purposes of an action against the company substantially as a
corporation sole.

A member of a joint stock express company may maintain an action
against it in the manner prescribed by said statute (*i. e.*, against its
president or treasurer) to recover for goods lost which were delivered
to it for transportation, the same as if he was not connected with the
company.

A receipt given by an express company contained a clause to the effect that the company would not be liable for loss or damage unless the claim therefor was made in writing "within thirty days from the accruing of the cause of action." In an action to recover for a loss, *held*, that the clause was not in the nature of a condition precedent to plaintiff's right to recover, as it assumes the existence of a cause of action which has accrued, but was in the nature of a limitation and could not be availed of upon trial unless set up in the answer.

The receipt also contained a stipulation that the company should "not be liable for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value" was therein stated. *Held*, that this did not include a loss occasioned by the company's negligence

(Argued September 25, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 6 Lans., 319; 63 Barb., 349.)

The action was brought to recover of the defendant, as president of the American Merchants' Union Express company (of which company the plaintiff Westcott was a stockholder), the value of a package of furs.

The furs had been sent by the plaintiffs, from Utica, to one J. Ruszits, in the city of New York, to be dressed. Having been dressed by him, they were packed up in a small bale and delivered to the defendant for transportation to Utica, on January 7th, 1870.

When the package was delivered to the defendant, a paper was executed, on its part, as follows:

"NEW YORK, *January* 7, 1870.

"Received of J. Ruszits one bale, said to contain valued at        dollars, marked Geo. Westcott & Co., Utica, N. Y., which we undertake to carry to the nearest point of destination reached by this company, subject expressly to the following conditions, namely: This company is not to be liable for any loss or damage, except as forwarders only, nor for any loss or damage by fire. * * * Nor shall this company be liable for any loss or damage of any box, package or

thing for over fifty dollars, unless the just and true value thereof is herein stated; nor upon any property or thing, unless properly packed and secured for transportation; nor upon any fragile fabrics, unless so marked upon the package containing the same; nor upon any fabrics consisting of or contained in glass. This company will not be liable for any loss or damage, unless the claim therefor shall be made, in writing, within thirty days from the accruing of the cause of action, in a statement to which this receipt shall be annexed. The party accepting this receipt hereby agrees to the conditions herein contained."

At the time of the delivery of the bale, it was so packed as not to indicate, in any way, its contents or their value, and the agent of the plaintiffs presented the above described document to the defendant, partly written and partly printed, to be signed by its agent. The agent of the defendant accordingly signed it, redelivered it to the agent of the plaintiffs, and received the said package, to be carried under and upon the contract evidenced by such paper. Neither the express company nor its agent who received the package had any knowledge or notice that its value actually exceeded fifty dollars. The plaintiffs, who were the consignees of the package, applied for and demanded the same at the office of the express company at Utica, but it was not found.

It was controverted whether the referee actually found negligence on the part of the company. His finding was, "that the allegations of the complaint numbered one, two, three and four were true." The allegations of the complaint were not numbered, and defendant claimed that these were certain preliminary formal allegations, which did not affect the question of negligence. The plaintiffs, on the other hand, insisted that this was a mistake, and that the referee included that portion of the complaint which concerned the allegations of his negligence in the numbers above stated.

The value of the package was $1,104.30. The plaintiffs did not, within thirty days next after the accruing of a cause of action to them, under the contract of carriage, for the non-

delivery of the package, make a claim therefor upon the express company, in writing, in a statement to which the contract of carriage was annexed.

The referee decided, as matter of law, that the plaintiffs were entitled to recover against the defendants the value of the package of furs, with interest, amounting to $1,252.45.

*Francis Kernan* for the appellant. The receipt given to plaintiff by the express company is the contract by which the rights of the parties in this case are to be controlled. (*Long* v. *N. Y. C. R. R. Co.*, 50 N. Y., 76; *Belger* v. *Dinsmore, Prest., etc.*, 51 id., 166; *Steers* v. *N. Y. and P. S. S. Co.*, MS. op. Com. App.) Under the contract defendant became an ordinary bailee and forwarder for hire, according to the terms of the same. (*Dorr* v. *N. J. St. Nav. Co.*, 11 N. Y., 485, 493; *Sunderland* v. *Westcott, Prest., etc*, 40 How., 468; *Hooper* v. *Wells, Fargo & Co.*, 5 Am. L. Reg. [N. S.], 16.) Defendant was only liable for loss or damage by negligence, and such negligence will not be presumed, but must be affirmatively shown. (*Lamb* v. *C. and A. R. R. and T. Co.*, 46 N. Y., 272; *Cochran* v. *Dinsmore, Prest., etc.*, 49 id., 249; *French* v. *B., N. Y. and Erie R. R. Co.*, 4 Keyes, 108; *Moore* v. *Evans*, 14 Barb., 530.) The evidence will not warrant a finding of loss by negligence. (*Burrell* v. *N. Y. C. R. R. Co.*, 6 Hand, 184; *Moore* v. *Evans*, 14 Barb., 530.) The damages should be limited to fifty dollars. (*Belger* v. *Dinsmore, Prest., etc.*, 51 N. Y., 166, 173; *Wetzell* v. *Dinsmore, Prest., etc.*, 54 id., 496; *Cragin* v. *N. Y. C. R. R. Co.*, 51 id., 64; *Warner* v. *West. Tr. Co.*, 5 Robt., 490; *Merrill* v. *Grinnell*, 30 N. Y., 594, 615, 616; *Orange Co. Bk.* v. *Brown*, 9 Wend., 115.) Plaintiffs cannot maintain an action upon a contract by the association of which they are members with themselves. (2 R. S. [4th ed.], 717, § 121; Ang. & A. on Corp. [6th ed.], § 390.) The failure to present a written claim within thirty days, as required by the contract, prevented a recovery. (*Roach* v. *Ins Co.*, 30 N. Y., 546.)

*Charles Mason* for the respondents. Upon proof of delivery of goods to a carrier for transportation, and evidence that they have not been delivered at their place of destination after a reasonable time, the carrier is accountable for them. (Edw. on Bailm., 566, 320; *Dale* v. *Hall*, 1 Wils., 281; 3 Barb., 380; *Logan* v. *Matthews*, 3 Barr [Penn.], 417; *Ware* v. *Gray*, 11 Pick., 106; Story on Bailm., § 410.) After demand and refusal to deliver the goods, the *onus* rests on the carrier to account for the loss. (*Beardsley* v. *Richardson*, 11 Wend., 25; *Schmidt* v. *Blood*, 9 id., 271; 2 Salk., 655; 7 Cow., 500, note *a;* *Coykendall* v. *Eaton*, 37 How. Pr., 438; *Willard* v. *Bridge*, 4 Barb., 361; 2 Pars. on Con. [5th ed.], 96, note *w;* *Esmay* v. *Fanning*, 5 How. Pr., 232; Edw. on Bailm., 568.) Defendant being a common carrier, the condition in the receipt, that he will be liable only as a forwarder, is not binding. (Redf on Corp., § 56; *Hooper* v. *Wells, Fargo & Co.*, 27 Cal., 11; 5 Am. L. Reg. [N. S.], 16, 31; *Sherman* v. *Wells, Prest., etc.*, 28 Barb., 403; 23 N. Y., 335; 19 Barb., 346; 34 How. Pr., 421.) Exceptions of the common carrier's liability contained in receipts and bills of lading are construed most strictly against the carrier. (*Steadman* v. *West. Tr. Co.*, 48 Barb., 97; *Wells* v. *St. Nav. Co.*, 4 Seld., 375, 380; *Alexander* v. *Greene*, 7 Hill, 533, 547; *Shumway* v. *Erie R. Co.*, 4 Hand, 123; 19 Wend., 329; *Belger* v. *Dinsmore*, 51 Barb., 69; *Hooper* v. *Wells, Fargo & Co.*, 5 Am. L. Reg. [N. S.], 16; *N. J. S. Nav. Co.* v. *Mer. Bk.*, 6 How. [U. S.], 344, 382; Abb. on Shipping, chap. 3, § 3; *Guillaume* v. *Ham. and Am. P. Co.*, 42 N. Y., 212; *Steinway* v. *Erie R. Co.*, 43 id., 123; *Woodin* v. *Austin*, Alb. L. Jour., Sept., 1871, p. 13.) Defendant's failure to deliver the package to plaintiffs, when demanded, established negligence, and the *onus* of accounting for the default lies with him. (*Burwell* v. *N. Y. C. R. R. Co.*, 45 N. Y., 184; *Arent* v. *Squire*, 1 Daly, 347; *Earl* v. *Cadmus*, 2 id., 237; *Wild* v. *Peckford*, 8 Mees. & W., 443; Edw. on Bailm., 483, 492, 493, 494, 304, 305, 323; *Logan* v. *Matthews*, 6 Barr [Penn.], 417; 5 Am. L. Reg. [N. S.], 16; 6 How. [U. S.], 344, 382, 383, 423.) Where the loss or

injury has been caused by the negligence of the carrier, courts have been strict in holding the carrier liable. (*Read* v. *Spaulding*, 30 N. Y., 630 ; *Davis* v. *Garrett*, 6 Bing., 716 ; *Beeson* v. *Charleston, etc., Co.*, 1 Harper, 262 ; *Campbell* v. *Muse*, id., 468 ; *Britt* v. *Reed*, 4 Bing., 127 ; *Hart* v. *Allen*, 2 Watts, 114 ; *Hand* v. *Boynes*, 4 Whart., 204 ; *Williams* v. *Grant*, 1 Conn., 487 ; *Crosbey* v. *Fith*, 12 id., 410 ; Story on Bailm., § 470 ; Angell on Com. Car., § 266.) It was a question of fact for the referee to decide whether there was such negligence in the defendant or not. (2 Kern., 926 ; 30 N. Y., 211 ; *Grant* v. *Morse*, 22 id., 323 ; *Tomlinson* v. *Mayor, etc.*, 44 id., 601 ; *Rider* v. *Powell*, 28 id., 310, 317 ; *Comar* v. *Pultz*, 21 id., 547 ; *Chubbuck* v. *Vernon*, 42 id., 432.) The receipt given plaintiffs does not limit defendant's common law liability for a loss arising from negligence. (*Simmons* v. *Law*, 3 Keyes, 217, 220 ; Edwards on Bailm., 56, 569.) The presentment of claim for damages, with receipt attached, at the New York office, as provided by the contract, was not a condition precedent to defendant's liability to an action to recover damages. (*Place* v. *Un. Ex. Co.*, 2 Hill, 19 ; *So. Ex. Co.* v. *Caperton*, 4 Am. Reg. [44 Ala.], 118.) These joint stock companies organized under the statutes of this State are corporations, and not partnerships. (*Sandford, Prest., etc.*, v. *Bd. Suprs. N. Y.*, 15 How. Pr., 172 ; *Waterbury* v. *Mer. Un. Ex. Co.*, 50 Barb., 157 ; Const. of N. Y., art. 8, §§ 1, 3.)

DWIGHT, C. The defendant presents some preliminary reasons why it is not liable to the plaintiff. These will be considered before discussing the case upon its merits.

It is urged that, as the plaintiff is a joint associate with other members in the American Merchants' Union Express Company, he cannot maintain this action upon a contract made by the association with himself. It is claimed to be in the nature of an action at law by plaintiff against himself, with others as defendants, and similar to an action by a partner against the partnership, which could only be brought in equity for an accounting.

It is a well settled general rule that one partner cannot bring an action against himself and his associates in a court of law. This is largely owing to a technical rule that he cannot be at once plaintiff and defendant. The rule goes even further, and does not allow him to sue his associates even in a case where the damages sought to be obtained, belong to himself, provided they would have to be paid out of a fund to which the plaintiff must himself contribute. (Lindley on Partnership, 728, 729, and cases cited.) The remedy in all such cases is an action in equity in which an account can be taken, and the interests of the respective partners be accurately ascertained.

The inconvenience of this rule, as applied to large unincorporated joint stock companies, has long been seriously felt. It has been avoided in England by the institution of a public officer to sue and to be sued on behalf of the members of the association. In this case, care is taken to render the public officer the representative of the company as distinct from the individuals composing it. Where this is done, legal proceedings between the public officer and those individuals, or any of them, are theoretically as unobjectionable as are legal proceedings between incorporated companies and their shareholders. (Lindley on Partnership, 720 ; see *Lawrence* v. *Wynn*, 5 M. & W., 355 ; *Skinner* v. *Lambert*, 4 Man. & Gr., 477 ; *Wills* v. *Sutherland*, 4 Exch., 211 ; *Smith* v. *Goldsworthy*, 4 Adol. & Ellis [N. S.], 430 ; *Reddish* v. *Pinnock*, 10 Exch., 213 ; *Chapman* v. *Milvain*, 5 id., 61 ; *Ex parte Hall*, 3 Deac., 405 ; *Harrison* v. *Brown*, 5 De Gex & Smale, 728.)

Such an officer must be created by law, since the partners or associates cannot, by their own act, empower their treasurer or secretary, for the time being, to represent the firm, and sue and be sued on its behalf. Such a person would not be a representative like a corporation sole, and could have no standing as such in court. (*Hybart* v. *Parker*, 4 C. B. [N. S.], 209.) On the other hand, if a representative of the firm be established *by law* instead of by the acts of the partners, the cases already cited show that he may sue and be sued by one

of the associates, though the associates themselves are not incorporated.

It is now necessary to consider the legislation of New York upon this subject. By chapter 238 of the Laws of 1849, as amended by the Laws of 1853, chapter 153, any joint stock company or association, consisting of seven or more shareholders or associates, may sue and be sued in the name of the president or treasurer, for the time being, of such joint stock company or association, and the suit shall have the same force and effect as regards the joint rights, property and effects of such joint stock company, etc., "as if such suits and proceedings were prosecuted in the names of all the shareholders or associates, in the manner now provided by law."

The second and third sections provide that the suit shall not abate by reason of the death, removal or resignation of the president or treasurer, or the death or legal incapacity of any shareholder or associate, but it may be continued against his successor. Other clauses provide that the president, etc., shall not be liable in his own person or property by reason of any such suit brought against him as nominal plaintiff or defendant.

The fourth section has an important bearing upon the point now under consideration. This provides that suits against any such joint stock company or association in the first instance, shall be prosecuted in the manner provided in the first section of the act, but after judgment shall be obtained against the company, and execution shall be returned unsatisfied, suits may be brought against all or any of the shareholders, individually, etc.

The language of these sections is sufficiently broad to include actions brought by members of the association against the president. This is particularly true of the fourth section, as it makes the property of the association a fund for the payment of claims against it, distinct from the property of individual members. In this respect the case is made to differ materially from that of a partnership, where the indi-

vidual property is equally liable, to pay debts, with that of the partnership funds. There appears, therefore, to be no reason why one of the members of the company may not bring an action against it, as he will not, necessarily, be bound to contribute to pay the judgment; it may be entirely collected from existing funds. If there are none such, the plaintiff will collect nothing unless he brings a separate action against an individual stockholder, in which any equities between the parties may be properly adjusted.

The conclusion that the president is, for the purpose of bringing actions, a corporation sole, is fortified by the following provision in the State constitution, article 8, section 1: "Corporations may be formed under general laws.   *   *   * Section 3. The term corporation, as used in this article, shall be construed to include all associations and joint stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships, and all corporations shall have the right to sue, and shall be subject to be sued in all courts in like cases as natural persons."

It is quite plain that the joint stock corporations organized under the act of 1849, and subsequent acts, have some of the powers or privileges of corporations not possessed by individuals or partnerships. The power to sue and be sued in the name of their president, is one of these. There are other powers of a similar nature, conferred on them by statute.

By chapter 289, Laws of 1867, these companies may hold real estate in the name of their president and his successors, and this officer may sell and convey free from any claim against any of the shareholders, or any person claiming under them.

On the whole, in view of existing legislation bearing upon this constitutional provision, and of the fact that a joint stock company may appear in court in the name of its president, and that its property must be first used to pay its debts, and that the shareholders can only be resorted to in a separate proceeding, after the general funds of the association are exhausted, and that the English courts have reached the con-

clusion that an officer legally representing the association can sue and be sued by a member, the result must be arrived at that a member of the association can bring such an action as the present against it. It would have been much to be regretted had the result been different, since stockholders in these large companies would have been, in that case, practically debarred from making use of the great facilities which they supply to commerce. It is plainly for the interest of the companies themselves, that they should be liable to such actions, otherwise it would be undesirable for men of extensive business to become owners of their stocks, as being thus deprived of the power of holding them liable to immediate and prompt payment for losses of goods under the companies' care.

The defendant further objects that it is not liable because "no claim was made in writing within thirty days from the accruing of the cause of action," according to a stipulation in the contract under which the package was sent. It is urged that this clause is in the nature of a condition precedent to the plaintiff's right to recover, and that as no such claim has been made, there is no right of action.

I do not think that this construction is correct. · The clause in question assumes that the plaintiff has a "cause of action," which has already "accrued" to him before the thirty days commenced to run. In that view the provision is in the nature of a statute of limitations, and should have been set up in the answer. As that was not done, the defendant cannot avail himself of it. Had we come to the conclusion that the clause was a condition precedent, the question would have been open to consideration whether so short a time was reasonable. (*See Adams Express Co.* v. *Reagan,* 29 Ind., 21; *Southern Express Co.* v. *Caperton,* 44 Ala., 101.)

The facts of the case must now be considered on their merits.

The true question in the cause concerns the effect upon the parties of the stipulation that the defendant should "not

be liable for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value is herein stated."

It must be conceded that this stipulation, under the circumstances of this case, is a part of the contract, and is binding on the plaintiff. This is decided in *Belger* v. *Dinsmore* (51 N. Y., 166), and in *Steers* v. *Liverpool Steamship Co.* (57 id., 1).

The only question open for discussion is the correct construction of the words used. Does the phrase "any loss or damage" include losses, etc., caused by the negligence of the defendant? It is claimed by the defendant that there was no finding by the referee that it was guilty of negligence. The plaintiff controverts this position. The difference between the parties is occasioned by the referee's finding that certain propositions numbered in the complaint were true, without setting forth exact facts, and there is a controversy as to the propositions represented by the numbers. The allegation of negligence was set up in the complaint; there was evidence to sustain it at the trial, and it is difficult to suppose that the learned and experienced referee who tried the cause did not find one way or the other upon the subject. At all events, there was sufficient evidence to support such a finding. The property in question was proved to be in the custody of the company, at its office in New York, and thereafter no trace of it can be found. The defendant gave no satisfactory explanation of the loss. True, one Brownson, the defendant's agent, made inquiries for the package, and found that it, or a corresponding package, was put on a shipping bill for Utica on January 17th, 1870, but could obtain no further trace of it. As far as appears, he made no effort to find it, except by inquiring by letter concerning it, and by examining the company's books. These facts serve to show negligence within the ruling in *Steers* v. *Liverpool Steamship Company* (*supra*). The question is thus distinctly presented whether the words in the receipt, that "this company will not be liable for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value thereof is herein stated,"

will exempt the defendant from liability for a loss occasioned by the negligence of its servants.

It was suggested in the argument, on the part of the appellant, that this case should be disposed of in his favor, on the ground that it was a fraud on the part of the plaintiff's agent toward the defendant not to have disclosed the true value of the goods, when called upon to do so, which would either have defeated the recovery altogether, or at least have reduced it to fifty dollars. This point, however, was not presented at the trial, nor was this defence distinctly, if at all, set up in the answer. Under the circumstances, we do not think that theory open to consideration. Had it been, it would have been necessary to consider such cases as *Clay* v. *Willan* (1 H. Black., 298); *Izett* v. *Mountain* (4 East, 370); *Nicholson* v. *Willan* (5 id., 507); *Bignold* v. *Waterhouse* (1 M. & S., 259); *Batson* v. *Donovan* (4 Barn. & Ald., 21, and opinion of HOLROYD, J.), and kindred cases, in which this aspect of the case and its relation to the question of negligence have been fully considered in the English courts.

Dismissing this topic of fraud, it is only necessary to examine the point whether the clause in the defendant's receipt is sufficient to exempt it from losses occasioned by negligence. This point must now be regarded as settled by recent decisions in this court and in the Court of Appeals. Reference may be made to *Belger* v. *Dinsmore* (51 N. Y., 166); *Steers* v. *Liverpool, New York and P. Steamship Co.* (*supra*); *Magnin* v. *Dinsmore* (56 N. Y., 168). The result of these cases is, that it is lawful for a carrier to make such a contract as was entered into in the present case, exempting him from liability, and that he may, by *clear* and *distinct expressions*, relieve himself from losses occasioned by his own negligence. On the other hand, general words, "such as that he will not be liable for loss, or detention, or damage," are not to be construed to extend to losses, etc., occasioned by negligence. The words are to be taken most strongly against the party whose language they are, and who is in an advantageous position in fixing the terms of the contract.

The case of *Magnin* v. *Dinsmore* (*supra*) so closely resembles the present case as in substance to govern it.    The contract contained the following clause : " It is further agreed and is part of the consideration of this contract, that the Adams Express Company are not to be held liable or responsible for the property herein mentioned, for any loss or damage arising from the dangers of railroad, ocean, steam or river navigation, etc., or unless specially insured by them, and so specified in the receipt;   *   *   *   and if the value of the property above described is not stated by the shipper, the holder thereof will not demand of the Adams Express Company a sum exceeding fifty dollars for the loss, or detention of or damage to the property aforesaid." The Court of Appeals held, that the clause requiring insurance must be regarded as distinct from that referring to a disclosure of value.    Accordingly, the losses referred to under the latter clause must be other than those specified in the former, which were of the dangers of railroad, ocean and steam navigation, etc.

Under the last clause of the contract, the jury found a verdict for the plaintiff for fifty dollars, no value having been stated by the shipper at the time of making the contract, though the goods were worth upwards of $1,400.    It appeared, however, that the package had never been delivered to the consignees, nor was any explanation of the failure to deliver shown by the carrier.    The Court of Appeals held, that there was sufficient evidence of negligence to go to the jury, and that the judgment of the court below must be reversed, since there was no clear expression of intent in the carrier's receipt to exempt itself from losses occasioned by its negligence. The result in the case at bar, in the court below, as reported in 6 Lansing, 319, was approved.

We are unable to distinguish *Magnin* v. *Dinsmore*, in any material respect, from the present case.    There were in the case under discussion clauses exempting the defendant from the dangers of navigation, the act of God, etc., entirely distinct from that now under construction.    The words affecting the decision of this cause were simply these: " Nor shall this

company be liable for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value thereof is herein stated." There is in this phraseology no such clear and distinct expression of exemption from loss by negligence as the case of *Magnin* v. *Dinsmore* requires, and it has been already shown that there was, as in that case, sufficient evidence of negligence to justify a finding to that effect.

The judgment of the court below must be affirmed.

All concur. Judgment affirmed.