Emil A. Williams, of Brooklyn, for appellant.
David F. Price, of Brooklyn, for respondent.

ASPINALL, J.  This action was brought by the plaintiff to recover the sum of $150, deposited by him with the defendant herein as security under a contract of employment dated the 16th day of February, 1911.  By this contract the plaintiff was to drive one of the defendant's delivery wagons, and agreed as follows:

"That he will faithfully account, according to instructions, for all moneys collected by him as such driver, and faithfully and honestly perform all his other duties."

The plaintiff was the only witness sworn on the trial, and at the close of his testimony the defendant moved to dismiss the complaint, upon the ground that he had failed to make out a cause of action against the defendant, which motion was denied, whereupon the defendant rested, without offering any evidence, and the court granted judgment for the plaintiff for the full amount, with interest and costs.

This judgment should be reversed, as it affirmatively appears by the plaintiff's own evidence that he had failed to account for $139.29, after demand, which was of itself a breach of the contract that he would faithfully account for any moneys collected by him as driver. Whitson v. Sheffield Farms Co., 76 Misc. Rep. 180, 136 N. Y. Supp. 560.

Judgment reversed, and a new trial ordered; costs to abide the event.

PUTNAM and CRANE, JJ., concur.

---

(153 App. Div. 516.)

### HEALY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.  November 13, 1912.)

1. WAREHOUSEMEN (§ 24*)—RECEIPTS—COUPONS—CONDITIONS.

A warehouseman, giving a receipt for goods deposited, cannot insert a condition therein, without notice to the bailor, that in case of loss he shall be liable for not over $10, since it would impair his obligation to exercise reasonable care, required by General Business Law (Consol. Laws 1909, c. 20) § 91, which specifies the form of warehouse receipts.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 48, 49, 51–54; Dec. Dig. § 24.*]

2. BAILMENT (§ 14*)—RAILROAD CHECKING ROOMS—CONTRACTS—NOTICE.

One checking a handbag at a parcel room in a railroad station, and receiving a check on the back of which in fine print was a provision that the depositor, in accepting said check, agreed not to hold the railroad liable for more than $10, to which his attention was not called, can recover the real value of the handbag.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 45–56; Dec. Dig. § 14.*]

Appeal from Schenectady County Court.

Action by William J. Healy against the New York Central & Hudson River Railroad Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Visscher, Whalen & Austin, of Albany, for appellant.

Henry S. Baehler, of Schenectady, for respondent.

LYON, J. This action was brought to recover the value of a handbag and contents, which the plaintiff on the afternoon of November 4, 1911, checked at the parcel room of the defendant at its station in the city of Albany, receiving therefor a duplicate cardboard coupon, two by three inches in size, upon the face of which was printed:

New York Central Lines
New York Central & Hudson River Railroad Company.
Duplicate Coupon.
N. B.—See conditions on back.
Albany.

Received ...................................................................

Delivered ...................................................................

73815

251                                                                    Series A

Upon the back of the coupon was printed:

New York Central & Hud. Riv. R. R. Co
Duplicate Coupon.
To claim parcel, this coupon must be presented
at parcel room,
Albany
between the hours during which the room is open for business.

Charges 10 cents for first 24 hours, and 5 cents for each additional 24 hours, or fraction thereof, on each piece of handbag, parcel, etc. Glass, china, etc., taken only at owner's risk of breakage. The depositor in accepting this duplicate coupon expressly agrees that the company shall not be liable to him or her for any loss or damage of any piece to an amount exceeding TEN DOLLARS.          W. M. Skinner, General Baggage Agent.

The words assuming to limit the liability of the defendant were in fine print, with the exception of the words "ten dollars." The plaintiff, upon receiving the coupon, put it in his pocket without reading it, and without his attention having been called to the limitation of liability printed thereon. About 10 o'clock in the evening of that day the plaintiff presented the coupon at the parcel room and demanded his handbag. An investigation showed that, through the mistake of the person in charge of the parcel room, coupons had been mismatched, and the plaintiff's handbag had been delivered to another person. It has never been recovered, and its value, with the contents, was $70.10, for which sum, with costs, the lower court rendered judgment against the defendant. Liability for the loss is conceded, but the defendant claims that the liability is limited to $10, and that is the sole question involved upon this appeal.

[1] Plainly the relation between the parties was that of bailor and bailee for hire, but the parties differ somewhat as to the nature of the bailment. The handbag was not checked for transportation over

defendant's road, but simply for safe-keeping, and to be redelivered to plaintiff at the place of deposit upon presentation of the coupon. The plaintiff had that afternoon come from his home in Schenectady by a street railroad line, which was neither owned nor operated by defendant, and so far as appears from the record the plaintiff did not contemplate becoming a passenger upon defendant's railroad. The rules, therefore, relative to the liability of a common carrier, were not applicable.

The defendant contends that in its relations with the plaintiff it was acting in the capacity of warehouseman, and that its liability is that of warehouseman only. Section 142 of the General Business Law (Consol. Laws 1909, c. 20) defines a warehouseman as a person lawfully engaged in the business of storing goods for profit. Defendant claims the right to limit its liability under the provisions of section 91 of the General Business Law, which specifies the form of warehouse receipts, and provides that a warehouseman may insert in a receipt issued by him any terms and conditions not contrary to the provisions of such law, and which shall not in any way impair his obligation to exercise that degree of care in the safe-keeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.

Assuming, as the defendant claims, that the coupon complied with the requirements of section 91 as to a receipt, except as to the date of issue, which was left blank, yet I think that the clause of the coupon which attempted to limit the liability of the defendant impaired its obligation to exercise that degree of care in the safe-keeping of the goods intrusted to it which a reasonably careful man would exercise in regard to similar goods of his own, and hence was a condition which the defendant had not the legal right to insert in the coupon and was void. It is a matter of common knowledge that the value of a handbag and its contents carried by a person traveling is often many times $10, and manifestly a condition in a receipt which limits the liability of the bailee to so small a sum weakens his sense of obligation to exercise that degree of care which he would be likely to exercise if he knew that he would be held liable for the full value of the parcel stored in the event of its loss.

[2] However, I think that the decision of this appeal should be placed upon the broader ground that under the circumstances disclosed by the record the unreasonable condition printed upon the coupon, attempting to limit the liability of the defendant to not exceeding $10, was void. Had notice been given by the bailee to the bailor of the condition limiting the liability of the former, and the latter then seen fit to enter into the bailment, a different question would be presented. But in the case at bar no notice whatever was given to the bailor of the existence of this condition; neither was there anything connected with the transaction, which was for the mutual benefit of both parties, which would tend in any way to suggest to a reasonably prudent man, or lead him to suspect, the existence of such a special contract, or tend to put him on guard or on inquiry relative thereto.

The coupon was presumptively intended as between the parties to

serve the special purpose of affording a means of identifying the parcel left by the bailor. In the mind of the bailor the little piece of cardboard, which was undoubtedly hurriedly handed to him, and which he doubtless as hurriedly slipped into his pocket, without any reasonable opportunity to read it, and hastened away without any suggestion having been made upon the part of the parcel room clerk as to the statements in fine print thereon, did not arise to the dignity of a contract by which he agreed that in the event of the loss of the parcel, even through the negligence of the bailee itself, he would accept therefor a sum which, perhaps, would be but a small fraction of its actual value.

The plaintiff having had no knowledge of the existence of the special contract limiting the liability of the defendant to an amount not exceeding $10, and not being chargeable with such knowledge, the minds of the parties never met thereon, and the plaintiff cannot be deemed to have assented thereto, and is not bound thereby.

The judgment entered upon the decision of the County Court, awarding to the plaintiff the full value of the handbag and contents, together with the costs of the action, should be affirmed, with costs of this appeal to the respondent. All concur; HOUGHTON, J., in memorandum.

HOUGHTON, J. I concur in an affirmance of this judgment; but I do not agree that the Warehouse Law has anything to do with the question, or that it in any way limits or imposes a liability upon the defendant. It is perfectly apparent from the whole scheme of the statute relating to warehousemen that it seeks to regulate only those persons or corporations who store merchandise which is to be resold or goods which are to remain some considerable time in storage. This is evidenced by the fact that receipts are directed to be given by such warehousemen, stating particulars regarding the property deposited. Such receipts are negotiable, unless otherwise stipulated, and by the law merchant title to the property passes by a mere transfer of the receipt itself. Such business is a large and important one, requiring careful regulation. It seems to me furthest from the intention of the Legislature to apply such a law to a parcel room run in connection with a railroad station or a check room run in connection with a hotel, solely for the accommodation of the traveling public.

Confessedly the check which was issued to the plaintiff did not purport in the slightest way to conform to the provisions of section 91 of the General Business Law, specifying the form of a warehouse receipt, and it seems to me quite illogical to measure the defendant's liability by the concluding paragraph of that section. In addition, if the check which was issued to the plaintiff is to be deemed a warehouseman's receipt, I do not think the limiting of the valuation of the property deposited was a contract impairing the obligation to exercise due care. Whatever else may have been printed on the back of the check, there does not appear to be anything exonerating the defendant from liability if it should not exercise due care with re-

spect to the goods.  In fact, the defendant concedes that it did not
exercise due care, or such care as a reasonably careful man would
exercise in regard to similar goods of his own, because it delivered
the bag to somebody else and mixed up the checks, and therefore con-
fessedly was guilty of negligence and lack of care.  The defendant
confesses that because of its negligence it is liable to pay a certain
sum, and asserts that that sum is the amount of $10, which the plain-
tiff agreed to accept in case due care was not exercised.  The only
question for us to pass upon is, therefore, whether there was any con-
tract limiting the valuation of the goods to $10.  If there was,
then the plaintiff must be contented with a judgment for $10.  If
there was not, then he can recover the value of his goods, which he
deposited, and which the defendant failed to deliver to him.

The plaintiff had not arrived in Albany by the defendant's road,
but he was an intending passenger.  It was stipulated on the trial that
he deposited his bag temporarily, expecting to take a train for Mon-
treal at a later hour.  Still I do not think the defendant, in taking
the plaintiff's bag at its parcel room, was engaged in the business of
a common carrier, or that its liability is to be measured as such.  In
that business it was a simple bailee.  If it be assumed, however, that
the storing of baggage of passengers in a parcel room was a part of
defendant's business as a common carrier, there is nothing in this
state to prevent a common carrier of goods or passengers from en-
tering into a contract not to be liable in case of loss or injury even
from its own negligence.  Hodge v. Rutland R. R. Co., 112 App. Div.
142, 97 N. Y. Supp. 1107, affirmed 194 N. Y. 570, 88 N. E. 1121;
Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E.
864, 8 L. R. A. (N. S.) 199, 9 Ann. Cas. 909.  The law does not favor
such contracts however, and the language must be clear and distinct
in order to create exemption.  Gardiner v. N. Y. C. & H. R. R. Co.,
201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B,
281.  Such rule is peculiar to the state of New York, and in most
of the states of the Union common carriers are not permitted to make
contracts with respect to goods or passengers relieving them from
liability for their own negligence, because such contracts are deemed
contrary to public policy.  6 Cyc. 388, 578. No such objection exists,
however, to a contract fixing an agreed valuation of goods shipped,
and it is quite universally held that such a contract, entered into un-
derstandingly and in good faith, is binding upon the shipper.  6 Cyc.
400; Gardiner v. N. Y. C. & H. R. R. Co., 201 N. Y. 391, 94 N. E.
876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B, 281.

The only exception to the rule is that in some jurisdictions such a
limitation of liability as is involved in an agreed valuation is deemed
in effect an agreement not to be liable for the carrier's own negli-
gence, and where it is so regarded such agreement is not upheld.  It
was held as early as the case of Hollister v. Nowlen, 19 Wend. 234,
32 Am. Dec. 455, that a carrier could not restrict his common-law
liability for negligence, except by express contract, and that no form
of general notice was sufficient to exempt it from liability.  This was
adopted as the law in express company cases (Westcott v. Fargo, 61

N. Y. 542, 19 Am. Rep. 300) and telegraph company cases (Pearsall v. Western Union Tel. Co., 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662). In Tewes v. North German Lloyd Steamship Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, 9 Ann. Cas. 909, the decision in Westcott v. Fargo, supra, is distinctly stated to have been overruled, and the later express company decisions make the shipping contract given by express companies to the shipper binding upon the shipper, whether he reads it or not, because he is bound to make himself acquainted with its provisions. Knapp v. Wells Fargo & Co., 134 App. Div. 712, 119 N. Y. Supp. 117. In Rawson v. Pennsylvania R. R. Co., 48 N. Y. 212, 8 Am. Rep. 543, it was held that a notice printed on the face of a ticket with respect to the carrier's liability for baggage was not binding, unless the passenger's attention was called to it, or he knew of the stipulation from some other source. If his attention was called to it, or he knew of it, the law would presume in the absence of any objection upon his part, that he assented to its terms.

In Gardiner v. N. Y. C. & H. R. R. Co., 201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B, 281, it was held that such a stipulation limiting liability for baggage, printed on a special form of ticket issued at reduced rates, was binding; the decision going largely upon the fact that the public statutes of the state permitted a limitation as to liability for baggage, and required the publishing of schedules of rates with limitations as to such liability. With respect to steamship tickets and the limitations printed thereon, the courts, from Steers v. Liverpool, N. Y. & P. Steamship Co., 57 N. Y. 1, 15 Am. Rep. 453, to Tewes v. North German Lloyd Steamship Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, 9 Ann. Cas. 909, have uniformly held that the stipulation upon a ticket limiting liability for baggage was binding, whether the passenger read it or not. The reason for such holding is stated in the Steers Case as follows:

"Looking to the course of business, the court may take notice that the engagement for a voyage across the ocean is a matter of more deliberation and attention than buying a railroad ticket or taking an express company's receipt for baggage or freight. There is, therefore, no room in such a case for the suggestion that a party is surprised into a contract when he supposes himself only to be taking a token indicative of his right. The paper in evidence ought, therefore, to be regarded as having received the mutual assent of the parties, and as being, as its language purports, their contract touching the voyage in question."

Receipts given by transfer companies in exchange for baggage checks on railroad trains and at terminals are more analogous to the present situation than any other transaction with which the courts have had to deal. In Blossom v. Dodd, 43 N. Y. 264, 3 Am. Rep. 701, a passenger in a dimly lighted car had delivered his checks to a transfer messenger and received in exchange a card upon which there was printed a limit of liability in case of loss of baggage. It was held that the card was a mere token in exchange for baggage checks, and was not of such a nature as to put a person on his guard with respect to any memorandum printed thereon, and the persons receiving them were not presumed to know their contents or assent

thereto. This case is commented upon in Kirkland v. Dinsmore, 62 N. Y. 179, 20 Am. Rep. 475, and in Mills v. Weir, 82 App. Div. 398, 81 N. Y. Supp. 801, and in Morgan v. Woolverton, 136 App. Div. 351, 120 N. Y. Supp. 108, and followed in Madan v. Sherard, 73 N. Y. 329, 29 Am. Rep. 153, and in Grossman v. Dodd, 63 Hun, 324, 17 N. Y. Supp. 855, affirmed 137 N. Y. 599, 33 N. E. 642, and in Springer v. Westcott, 166 N. Y. 117, 59 N. E. 693. In Mills v. Weir, 82 App. Div. 396, 398, 81 N. Y. Supp. 801, 802, which held that a shipper was bound to read the receipt given him by the express company and was bound thereby, Bartlett, J., points out the difference between such a receipt and one given by a baggage transfer company, and says:

The cases of Blossom v. Dodd, 43 N. Y. 264 [3 Am. Rep. 701], Madan v. Sherard, 73 N. Y. 329 [29 Am. Rep. 153], and Springer v. Westcott, 166 N. Y. 117 [59 N. E. 693], decide nothing in conflict with the views which I have expressed in reference to the effect of the acceptance of the receipt in the case at bar. In the Blossom Case the paper was given to the plaintiff in exchange for his baggage checks in a train late at night, was illegible in the existing light, was unsigned in fact, and had no appearance of being a contract. As was said of these facts in Kirkland v. Dinsmore, supra: 'The circumstances in that case repelled the idea of a contract. The plaintiff received the card or ticket under circumstances indicating to him that it was given merely for his convenience and protection, to enable him to identify the baggage on delivery, and that he might know in whose possession it was.' In the Madan Case the circumstances under which the receipt was given was very similar. In the Springer Case the receipt was handed to the passenger folded up, and the express messenger did not tell her, nor did she know, what it contained. All three cases related to papers given in exchange for baggage checks to travelers in railway trains, and they go no further than to decide that the contents of such papers cannot be deemed binding upon the traveler, unless delivered to him under such circumstances as to constitute notice of their character. The distinction has often been pointed out between these baggage express cases and the shipment of articles by an ordinary express company, whose agreement of transportation is rarely oral, but almost invariably found in its receipt; and it is a distinction which renders the baggage express cases inapplicable as authorities to the facts of the case at bar."

The same line of reasoning is followed in Morgan v. Woolverton, supra. In Grossman v. Dodd, supra, it was held that the burden rested upon the bailee, attempting to limit his liability by contract, to show that the bailor assented to the terms of the receipt. It therefore was entirely competent for the defendant even to contract against its own negligence, or to contract for a limited liability. But in order to relieve itself from liability beyond the stipulated sum of $10 the defendant must show that the bailor actually or impliedly agreed to the contract, which in the present case it failed to do.

The business of checking hand baggage at railway stations has become a large and important one. It seems to me that any one in the ordinary course of business, checking his baggage at such a place, would regard the check received as a mere token to enable him to identify his baggage when called for, and that in no sense would he have any reason to believe that it embodied a contract exempting the bailee from liability or limiting the amount thereof. If the plaintiff knew that the defendant had limited its liability to $10, either by his attention being called to it or otherwise, then, of course, the law would

deem him to have assented to it, so that a binding contract would be effected. If he did not know it, I think the law imposed no duty upon him to read his check to find whether or not there was a contract printed thereon, or that he was guilty of neglect in not so read-ing it, because he had no reason to apprehend that a contract was printed thereon.

On this ground I think the plaintiff was entitled to recover the full value of his bag and its contents, irrespective of the Warehouse Law, and it is upon this ground alone that I assent to an affirmance of the judgment.