COTTRELL *v.* MICHIGAN UNITED TRACTION CO.

1. MASTER AND SERVANT—CONTRACTS—INTENT OF PARTIES.

It is a familiar rule, in construing contracts of employment, that the intention of the parties should govern and should be determined or collected from the words used in the writing, not from extraneous matters, and that the entire instrument should be examined, the particular purpose for which it is executed kept in mind and effect be given thereto if possible without adding to or subtracting from the phraseology as employed by the parties.

2. SAME—RELEASE.

Where the employee of an express company, in the city of Jackson, had, in making application for a position as driver, executed to the employer a release of all liability for damages which might be sustained by reason of his injury or death, also agreeing to pay to his employer any sum which it might be compelled to disburse in consequence of any claim so arising, and that the employee would, on demand, execute to the corporation or person owning or operating a transportation line whereon he might be injured a release of all claim arising out of the injury; also ratifying any agreement which might· be made by his employer with any transportation line in relation to releasing liability for any accident to employees of the employer and agreeing to be bound by any provisions of such agreement, the use of the words "driver at Jackson, Michigan," being evidently used as a limitation upon the work being done by the employee, prevent its having application to an injury which the servant sustained while he was acting as express messenger several years later for the same corporation, such servant being injured in a collision which he charged was caused by the negligence of defendant traction company. In. so far as he might be required, under his employment as a driver at the said city, to render services in or about railroads or steamboat lines, the clause would apply, but having no reference to the work of an express messenger, it could not be held to extend to that branch of the employment.

3. SAME—CONTRACTS—INTERPRETATION—RELEASE.

It is a general rule that words employed in the recital, limiting the class of cases to which the contract shall apply, will limit and restrict the effect of the contract, and the burden is on the defense to establish that a contract of release is by its terms applicable to the subject-matter or employment to which it is claimed the contract was intended to apply; in order to exempt the carrier from liability, or limit the extent of its liability for an injury arising from negligence, the contract or release must expressly so provide.

4. CARRIERS—RELEASE OF LIABILITY—NEGLIGENCE.

Nothing short of an express stipulation in writing or by parol will be permitted to discharge the carrier from the obligation of exercising care, the law has annexed to its business. Such an exemption from liability cannot depend upon implication or inference or be founded upon doubtful or conflicting evidence, but must be specific and certain so as to exclude any doubt or controversy as to its application.

5. SAME—WAIVER—CONTRACT—RELEASE—EXPRESS MESSENGER.

Where an injured servant of an express company, in his application for the position as driver, executed a release of liability to the defendant and to any corporation with which it might contract for release of damages, the contract could not be held to relate to employment as express messenger in which the servant was engaged at the time of his death in a collision, several years later; and the question of the construction of the contract was one proper for the court and was properly determined by the court instead of submitting the question to the jury.

Error to Jackson; Parkinson, J. Submitted November 16, 1914. (Docket No. 129.) Decided January 29, 1915.

Case by Millard F. Cottrell, as administrator of the estate of Ernest E. Clark, deceased, against the Michigan United Traction Company, for the unlawful killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Sanford W. Ladd* (*Israel T. Cowles, Charles E. Lewis, Jr.,* and *Warren, Cady, Ladd & Hill,* of counsel), for appellant.

*Price & Whiting* and *Forrest C. Badgley,* for appellee.

STONE, J. This action was brought by the administrator of the estate of Ernest E. Clark, deceased, against the defendant, to recover damages for the alleged wrongful death of plaintiff's decedent. Mr. Clark died as a result of injuries received in a collision near North Concord, Jackson county, on November 12, 1912, on a line of the railway operated by defendant, he surviving about two hours after the accident. Plaintiff's decedent was acting in the capacity of an express messenger in charge of express matter of the United States Express Company, in a car carrying express which met in a head-on collision with an express car at the point first stated.

To a declaration alleging negligence of defendant in the operation of its cars, the defendant pleaded the general issue, and gave notice thereunder, in part, as follows:

"This defendant will further show that prior to the time of the accident upon which the claim of this suit is based that the said plaintiff's decedent herein had made application to the express company, in writing, for employment by it as an agent or express messenger, and that, in pursuance to said application, he was, prior to and at the time of the collision, employed by the express company under a contract in writing between said Clark and said express company, by the terms whereof he did assume all risk of all accidents and injuries that he might sustain in the course of said employment, whether occasioned by negligence, or whether resulting in death or otherwise, and did undertake and agree to indemnify and hold harmless the said express company for any claims that might be made against it arising out of any claim or recovery for any damages sustained by him by reason of

said injuries, whether such injuries resulted by reason of negligence or otherwise, and did ratify all agreements made by the express company with any transportation line, namely, the Michigan United Railways Company, and its lessee, the Michigan United Traction Company, in which said express company had agreed, or might agree, that the employees of said express company should have no claim for injuries sustained in the course of their employment upon the line of said transportation company."

Plaintiff's decedent first entered the employ of the United States Express Company as a driver at Jackson, Mich., in 1906, under the terms of a written contract of employment, signed by himself and the authorized agent of the express company. He signed a printed form of application, which application bore the following heading:

"United States Express Company.
"Application for Employment.

"I apply for employment by the United States Express Company, and for that purpose have made and signed this application in my own handwriting."

He then states his full name, his residence, place and date of birth, parents' names and residence, the names of his last employers, with the terms of employment, with certain references to individuals and their addresses. The printed application signed by him contained the following language:

"I also state and agree, as terms and conditions of my employment, as follows: * * * I understand that I may be required to render services for the company on and about the railroad, stage, and steamboat lines used by the company for forwarding property, and that such employment is hazardous. I assume the risk of all accidents and injuries that I may sustain in the course of my employment, whether occasioned by negligence, and whether resulting in my death or otherwise. I agree to hold the company harmless from any and all claims that may be made against it arising out of any claim or recovery on the part of my-

self, or my representative, for damages sustained by reason of my injury or death, whether such injury or death result from negligence or otherwise. I agree to pay to the company, on demand, any sum which it may be compelled to pay in consequence of any such claim. I will execute and deliver to the corporation or persons owning or operating the transportation line upon which I may be so injured a good and sufficient release under my hand and seal of all claims, demands, and causes of action arising out of any such injury, or connected with or resulting therefrom. I ratify all agreements made by the company with any transportation line in which the company has agreed, or may agree in substance, that its employees shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party, and I agree to be bound by each and every of such agreements, so far as the provisions thereof relative to injuries sustained by employees of the company are concerned, as fully as if I were a party thereto. The provisions of this agreement shall be held to inure to the benefit of any and every corporation and person upon whose transportation line the company shall forward merchandise, as fully and completely as if made directly with such corporation or persons."

Then follows a description of the applicant to be prepared and signed by the superintendent or agent, which is signed by the agent of the company. Next follows a printed form of contract of employment reading as follows:

"Contract of Employment.

"On the statements and conditions contained in the foregoing application, the United States Express Company hires the applicant above named to serve as [written] driver at Jackson, Michigan [printed form], and to perform such other services as may be directed from time to time, from [written] July 6, 1906, [printed form] and agrees to pay him for his services at the rate of [written] forty-five [printed form] dollars per month, or fractional part thereof, to the date of his resignation or discharge."

Signed by the express company and by Clark.

At the date of the accident the defendant was operating at the place of the accident as lessee from the Michigan United Railways Company, under lease by which it assumed all contracts of the lessor. The contract between the Michigan United Railways Company and the United States Express Company, providing for the carrying of express over this line, which the defendant herein assumed as lessee, provides, in part, as follows:

"The express company hereby agrees that it will: Assume all losses, risks, and damages to express business of all kinds forwarded by it over the lines of the traction company, as well as all losses, risks, and damages to its own property while on or near the lines of the traction company; also assume the risk of personal injury to, or death of, any employee solely in the service of the express company while engaged in its business of traveling free under its orders on any of the railroads or property of the traction company, and will protect and save harmless the traction company from all loss and damage growing out thereof, or connected therewith. The traction company will protect the express company against any liability for damages which may result from the death of, or injury to, any person jointly employed by the traction company and the express company from the negligence of the traction company or its employees without negligence on the part of the express company or its employees, and it is understood between the parties that the traction company shall have the full benefit of all agreements between the express company and its employees whereby the express company or the traction company is released from claims and demands on their part on account of personal injuries or death."

At the time of the collision here involved Mr. Clark was riding in defendant's car in sole charge of express matter. No evidence was offered by defendant pertaining to the cause of the accident involved; it being defendant's contention that by the plain terms of the contract between Mr. Clark and his employer, the express company, the present action is absolutely barred.

At the close of the testimony the defendant made a motion for a directed verdict in its behalf, which was denied, and exception duly taken, and the case was submitted by the trial court to the jury upon the question of damages alone. The jury returned a verdict for the plaintiff, upon which judgment was entered.

By appropriate assignments of error the following points are urged by defendant:

(1) The court should have directed a verdict for defendant:

(*a*) By the terms of the contract of employment of plaintiff's decedent, he assumed the risk of all accidents and injuries such as the one in question, and released the defendant herein from all claim therefor.

(*b*) This contract is valid, and may be enforced by the defendant in this case.

(2) If the court refused to direct a verdict for the defendant, then the court should have submitted to the jury the question as to whether or not the contract between Clark and the United States Express Company was binding on plaintiff's decedent in the case at bar.

It is also claimed that, if the court refused to direct a verdict for defendant, it should have submitted to the jury the question whether the application for employment, by plaintiff's decedent to the United States Express Company, covered and contemplated the performance of the services which he was rendering at the time of the accident. It is the claim of the plaintiff that in the application made by plaintiff's decedent in 1906, the parties did not contemplate Clark's employment as an express messenger; that Clark sought employment as a driver for the express company at Jackson, Mich. It is urged by plaintiff that the defendant failed to maintain its plea, or to show what it undertook to show under its notice, that Clark made application for employment by the express company as an "agent or express messenger."

We are satisfied that the application and the contract of employment should be treated as one contract, signed at one and the same time by the party seeking employment, and must be understood and construed with reference to the particular work or line of employment that the applicant desired. The words in the application, "I understand that I may be required to render services for the company on or about the railroad, stage, and steamboat lines used by the company for forwarding property," were contained in the printed form of application, and were made to fit any and every locality, and, in this case, should be understood, in the light of the surrounding circumstances, as referring to the job which Clark was applying for at Jackson, Mich. So far as he might be required under his employment as driver at Jackson, Mich., to render services about the railroad, stage, or steamboat which the company made use of, this clause had application. It may be said, as a matter of common knowledge, that the driver for an express company would have to do more or less work on or about the lines of the company used for transportation, and, if it made use of no stage or steamboat line at Jackson, Mich., it did make use of the street railway, and the words "stage and steamboat lines" might be treated as merely surplusage. The wording of the contract is also significant in this respect, and bears out the contention of the plaintiff that it has no reference whatever to the work of an express messenger, or to anything but the job specified, to wit, "driver at Jackson, Michigan." It reads that:

"The United States Express Company hires the applicant above named as driver at Jackson, Michigan, and to perform such other services as may be directed from time to time."

Whatever services he might be directed from time to time to perform by the terms of the contract, it is

urged, were to be performed in connection with his work as driver at Jackson, Mich., and the rate of wages was fixed at $45 per month for this service. He was not a driver at Jackson, Mich., at the time he met with his injury, and had not been for years. The agent of the express company at Jackson, Mich., testified on direct examination as follows:

"This application was made before Mr. Clark went to work, and signed by him and filed with me.

"Q. Was any application or any subsequent—any subsequent application or contract or agreement ever made with Mr. Clark up to the time of his death?

"A. No, sir. * * * "

On cross-examination the same witness testified:

"I could not say positively how long Mr. Clark worked as driver. He went into our employ at that time as driver. I presume he worked as driver for two years; I could not say positively; driver about the city of Jackson. After that he was appointed messenger for the company.

"Q. Did he act as shipping clerk for a time?

"A. Waybill clerk.

"Q. Where was he working then?

"A. In my office at Jackson. I do not recall how long he worked as waybill clerk. * * * Mr. Clark as waybill clerk received a salary of $55 a month; as messenger he was getting $60 a month."

In construing this contract of employment it is a familiar rule that the intention of the parties should govern. This intention must, however, be collected from the words used in the instrument, and not from matters *dehors* the writing. The entire instrument should be examined; the particular purpose for which it was executed should be kept in mind and given effect to, if it can be done, without adding to, or subtracting from, the words used by the parties. A release covers only such claims as were within the contemplation of the parties. Although there are general words in the application which might, if they stood alone, bear the

construction of a general release, these, we think, are limited and controlled by the recital of the specific employment, to wit, "driver at Jackson, Michigan," to which the release was evidently intended to apply. The rule is that, where the words in the recital apply to a particular kind or class of employment, as in this case, that of "driver at Jackson, Michigan, and to perform such other services as may be directed from time to time from July 6, 1906," the general words will be limited and restricted by the words in the recital. *Texas, etc., R. Co.* v. *Dashiell*, 198 U. S. 521, 25 Sup. Ct. 737; *Union Pac. R. Co.* v. *Artist*, 60 Fed. 365, 9 C. C. A. 14 (23 L. R. A. 581).

The burden of this defense is upon the defendant to show a release applicable to the employment in which the deceased was engaged at the time of his death.

It seems to be settled by the authorities that in order to exempt the carrier from liability, or to limit the extent of its liability for injury caused by its own negligence of any kind, the contract must expressly so provide. *Black* v. *Transportation Co.*, 55 Wis. 319 (13 N. W. 244, 42 Am. Rep. 713).

In the opinion in that case the court, referring to *New Jersey Steam Navigation Co.* v. *Bank*, 6 How. (U. S.) 343, quotes the following language:

" 'The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment. The exemption from these duties should not depend upon implication or inference, founded on doubtful and conflicting evidence, but should be specific and certain, leaving no room for controversy between the parties.' This rule is approved by the court of appeals in New York, notwithstanding the fact that that court has gone further than most of the other courts of the country in upholding contracts exempting carriers from liability for the negligence of their servants,

when such exemption has been clearly and expressly stipulated for.  See *Westcott* v. *Fargo,* 61 N. Y. 542 (19 Am. Rep. 300)."

In *Kenney* v. *Railroad Co.,* 125 N. Y. 422 (26 N. E. 626), the court of appeals of New York held that general words in the contract of a common carrier limiting its responsibility will not be construed as exempting it from liability for negligence, when they are capable of other construction. Speaking of the contract in that case, the court, on page 425 of 125 N. Y. (on page 627 of 26 N. E.), uses the following language:

"Our decision, however, is placed upon the ground that this contract does not in unmistakable language provide for an exemption from liability for the negligence of the defendant's employees. The rule is firmly established in this State that a common carrier may contract for immunity from its negligence, or that of its agents, but that, to accomplish that object, the contract must be so expressed, and it must not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule and forbid its operation, except where the carrier's immunity from the consequences of negligence is read in the agreement *ipsissimis verbis.* The doctrine of such contracts was stated by this court in the case of *Perkins* v. *Railroad,* 24 N. Y. 196, 206 (82 Am. Dec. 282). It was reiterated in the opinion of Judge Allen in *Blair* v. *Railroad Co.,* 66 N. Y. 313, 318 (23 Am. Rep. 55), and in *Mynard* v. *Railroad Co.,* 71 N. Y. 180 (27 Am. Rep. 28), Church, C. J., reviewing the question at some length, considered the prior decisions of this court and referred to certain decisions in the United States Supreme Court which held a different doctrine as to such agreements. In recognizing the right of the carrier to contract for its immunity from the results of negligence, he stated the general rule to be that such contracts must be expressed in unequivocal terms. This decision was followed as being decisive of the question in the later decisions in *Holsapple* v. *Railroad Co.,* 86 N. Y. 275;

*Nichols* v. *Railroad Co.,* 89 N. Y. 370, and *Canfield* v. *Railroad Co.,* 93 N. Y. 532 [45 Am. Rep. 268]."

The defendant, upon the main question in this case, relies upon *Baltimore, etc., R. Co.* v. *Voigt,* 176 U. S. 498, 20 Sup. Ct. 385, and the numerous decisions that have followed that case. It is worthy of passing remark that in that case the court expressly found:

"That Voigt, the defendant in error, had agreed in writing to indemnify the express company against any liability it might incur by reason of said agreement between the companies, so far as he was concerned, and further agreed to release the railroad company from liability for injuries received by him while being transported in the express cars."

In other words, in that case (as was claimed by defendant in its notice in this case) the agreement related to the particular employment of express messenger, in which he was then engaged.

An examination of the other cases cited by defendant's counsel discloses that in every instance the application and agreement related to the particular employment of express messenger. It will not do to say that the contract included all or any employment in which the applicant might engage, but the rule is, as above shown, that the identical words of the contract must refer to the employment.

Where a waiver is claimed by the defendant, in order to prevail in such defense, it should be made to appear that the waiver is plainly expressed in the contract. We are unable to find any such waiver in the application and contract relied upon by the defendant in this case. Looking at the entire instrument, we cannot say for a certainty that the employment of express messenger was within the contemplation of the parties when the contract was made.

Neither can we agree with the position of defendant that there was involved here a question of fact which should have been submitted to the jury. In

other words, we do not think that it was the duty of the trial court to submit to the jury the question whether the application for employment by plaintiff's decedent and the contract with the express company contemplated the performance of the services which he was rendering at the time of the accident. The question involved was one of law, and not of fact, and the jury should not have been permitted to speculate respecting it. We find no error in the ruling of the court upon this subject. This view of the case renders it unnecessary for us to consider the numerous other objections raised by the plaintiff to the validity of the waiver in the contract of employment.

We think the court reached the correct conclusion in the case, and, finding no reversible error in the record, the judgment of the circuit court is affirmed.

BROOKE, C. J., and McALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.